# IN THE SUPREME COURT OF TEXAS

══════════
No. 10-0928
══════════

RAUL ERNESTO LOAISIGA, M.D., AND RAUL ERNESTO LOAISIGA, M.D., P.A.,
PETITIONERS,

v.

GUADALUPE CERDA, INDIVIDUALLY AND AS NEXT FRIEND OF MARISSA CERDA, A
MINOR, AND CINDY VELEZ, RESPONDENTS

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued February 29, 2012**

JUSTICE JOHNSON delivered the opinion of the Court in which CHIEF JUSTICE JEFFERSON, JUSTICE WAINWRIGHT, JUSTICE GREEN, and JUSTICE GUZMAN joined, and in Parts I through V.A. and VI.A. of which JUSTICE WILLETT joined.

JUSTICE HECHT filed a concurring and dissenting opinion, in which JUSTICE MEDINA joined.

JUSTICE WILLETT filed a concurring and dissenting opinion.

JUSTICE LEHRMANN filed a concurring and dissenting opinion.

The Texas Medical Liability Act (TMLA) requires plaintiffs asserting health care liability claims (HCLCs) to timely serve each defendant with an expert report meeting certain requirements. In this case we consider whether claims that a doctor assaulted patients by exceeding the proper scope of physical examinations are subject to the TMLA's expert report requirements.

Two female patients sued a medical doctor, the professional association bearing his name, and a clinic, alleging the doctor assaulted the patients by groping their breasts while examining them for sinus and flu symptoms. Although they maintained that the claims were not HCLCs, the patients served the doctor and professional association with reports from a physician who, based only on the assumption that allegations in the plaintiffs' pleadings were true, opined that the defendant doctor's alleged actions did not fall within any appropriate standard of care. The defendants argued that the claims were HCLCs and moved for dismissal of the suit on the basis that the reports were deficient. The trial court denied the motions. The court of appeals held that the claims were not HCLCs, expert reports were not required, and affirmed the trial court's order without considering the reports' adequacy.

We hold that the TMLA creates a rebuttable presumption that a patient's claims against a physician or health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement are HCLCs. The record before us does not rebut the presumption as it relates to the TMLA's expert report requirements, nor are the expert reports served by the plaintiffs adequate under the TMLA. We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

**I. Background**

Guadalupe Cerda, individually and as next friend of her daughter Marissa Cerda, and Cindy Velez (collectively, the plaintiffs) sued Raul Ernesto Loaisiga, M.D., Raul Ernesto Loaisiga, M.D., P.A. (hereinafter, the P.A.), and Sunshine Pediatrics, LLP. The plaintiffs' claims are based on two separate incidents. Guadalupe alleges that she took Marissa, then age seventeen, to Sunshine

2

Pediatrics for treatment of a sinus problem. According to the pleadings, Dr. Loaisiga examined Marissa and "under the guise of listening to [Marissa's] heart through the stethoscope . . . cupped [Marissa's] breast with the palm of his hand." Velez, who was employed as a nurse at Sunshine Pediatrics, alleges that Dr. Loaisiga offered to examine her when she arrived at work with flu-like symptoms. She further alleges that during the examination Dr. Loaisiga had her take off her upper garment, then "he undid her bra from the front . . . [and] palmed her breast with one hand during his entire examination."

The plaintiffs sued for assault, medical negligence, negligence, gross negligence, and intentional infliction of emotional distress. They allege that Dr. Loaisiga knew or reasonably should have believed that Marissa and Velez would regard his touching of their breasts as offensive or provocative and Sunshine Pediatrics breached its duty and the appropriate standard of care by allowing Dr. Loaisiga to fondle them. The plaintiffs assert that although the case is actually for assault, in an "abundance of caution and in the alternative," they claim Dr. Loaisiga's actions "fell below the standard of care" for a doctor treating female patients. The pleadings of medical negligence specifically reference "Chapter 74 of the CPRC"—the TMLA. *See* Tex. Civ. Prac. & Rem. Code §§ 74.001–.507. The plaintiffs pray for judgment against the three defendants, but they do not specifically allege any type of claim, either direct or vicarious, against the P.A.

Within 120 days after filing their petition, the plaintiffs served Dr. Loaisiga and the P.A. with a report and curriculum vitae from Michael R. Kilgore, M.D., a family practitioner. *See id.* § 74.351(a), (b). Dr. Kilgore stated in the report that he had reviewed the plaintiffs' petition. He recited allegations from the petition and stated that if they were true, then Dr. Loaisiga's actions were

not within any appropriate standard of care, comprised an assault, and harmed the plaintiffs. In a supplemental report, Dr. Kilgore stated that the opinions he expressed as to Dr. Loaisiga also applied to the P.A.

Dr. Loaisiga and the P.A. filed objections to the reports and motions to dismiss. They argued that the reports were deficient because they failed to (1) implicate conduct of either Dr. Loaisiga or the P.A., (2) set out the applicable standard of care, (3) identify a breach of the standard of care, or (4) identify how the actions of Dr. Loaisiga or the P.A. proximately caused the alleged injuries. The motions also asserted that Dr. Kilgore's report was "based upon pure speculation and assumption" and Dr. Kilgore, as a family practitioner, was not qualified to render an expert opinion regarding Dr. Loaisiga's conduct as a pediatrician. The P.A. separately argued that neither the original nor the supplemental report addressed any theories of liability as to it and, in any event, the supplemental report was deficient because it gave no explanation of why the opinions in the original report applied to the P.A. The plaintiffs' response to each motion maintained that Dr. Kilgore's reports were adequate; Dr. Loaisiga was acting both individually and as the P.A., so there was no difference between the actions of the two; and Dr. Kilgore's reports were directed to both. In the alternative, the plaintiffs requested thirty-day extensions to cure any defects in the reports. *See id.* § 74.351(c) (stating that if an expert report is not timely served "because the elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency").

The trial court held a hearing on the motions to dismiss and denied them without stating why. Dr. Loaisiga and the P.A. appealed. *See id.* § 51.014(a)(9) (permitting immediate appeal of a trial court order denying all or part of a motion to dismiss for failure to serve an expert report in an

4

HCLC). The court of appeals affirmed. ___ S.W.3d ___. The court reasoned that the plaintiffs were not required to file expert reports because their claims against Dr. Loaisiga are assault claims, not HCLCs. *See id.* at ___. It did not reach the question of whether Dr. Kilgore's reports were deficient. The court also concluded that the TMLA does not apply to the plaintiffs' claims against the P.A. because the plaintiffs refer to the P.A. only in the introductory part of their pleadings and do not assert liability claims against it. *See id.* at ___.

We granted the petition for review of Dr. Loaisiga and the P.A. 55 Tex. Sup. Ct. J. 145 (Dec. 16, 2011). Before turning to the parties' arguments on the merits, we address our jurisdiction to consider this interlocutory appeal.

## II. Jurisdiction

Texas appellate courts generally have jurisdiction only over final judgments. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001). But an exception exists for certain interlocutory orders. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a); *Jackson*, 53 S.W.3d at 355. Section 51.014(a) provides in relevant part:

> A person may appeal from an interlocutory order of a district court, county court at law, or county court that:
> . . .
> (9) denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351.

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9).

A court of appeals' judgment ordinarily is conclusive when an interlocutory appeal is taken pursuant to section 51.014(a)(9). *See* TEX. GOV'T CODE § 22.225(b)(3). However, we may consider

5

an interlocutory appeal when the court of appeals' decision creates an inconsistency in the law that should be clarified to remove unnecessary uncertainty and unfairness to litigants. *Id.* §§ 22.001(a)(2), (e); 22.225(c), (e). This case involves an issue on which the courts of appeals have issued inconsistent decisions. *Compare* ___ S.W.3d at ___ (holding that a doctor's alleged fondling of the plaintiffs' breasts during medical examinations could not feasibly be explained as a necessary part of medical treatment and therefore does not give rise to an HCLC), *with Vanderwerff v. Beathard*, 239 S.W.3d 406, 409 (Tex. App.—Dallas 2007, no pet.) (concluding that a chiropractor's alleged rubbing of a plaintiff's genitals during a chiropractic examination gave rise to an HCLC because whether the chiropractor's actions were within the scope of a chiropractic examination could not be answered without reference to the standard of care required of a chiropractic provider). We have jurisdiction to resolve this issue. TEX. GOV'T CODE § 22.001(a)(2).

### III. Health Care Liability Claims

### A. General

Determining whether claims are HCLCs requires courts to construe the TMLA. We review issues of statutory interpretation de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).

The TMLA defines an HCLC as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). According to its definition, an HCLC has three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action

6

is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010) (plurality opinion).

This case focuses on the second element which concerns the nature of a claimant's "cause of action" and the definitions of medical care, health care, safety and professional or administrative services directly related to health care. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). The TMLA does not define the term "cause of action," but the generally accepted meaning of that phrase refers to the "'fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief.'" *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008) (quoting *A.H. Belo Corp. v. Blanton*, 129 S.W.2d 619, 621 (1939)). "Health care" is broadly defined as "any act . . . performed . . . by any health care provider for [or] to . . . a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10). And "medical care" is defined as "any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement." *Id.* § 74.001(a)(19). The Occupations Code, in turn, defines "practicing medicine" as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions by a person who . . . publicly professes to be a physician." TEX. OCC. CODE § 151.002(a)(13).

7

Analysis of the second element—the cause of action—focuses on the facts underlying the claim, not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts or legal theories asserted. *See, e.g.*, *Yamada v. Friend*, 335 S.W.3d 192, 196-97 (Tex. 2010); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847, 854 (Tex. 2005). We have previously determined that a claim based on one set of facts cannot be spliced or divided into both an HCLC and another type of claim. *See Yamada*, 335 S.W.3d at 197; *Diversicare*, 185 S.W.3d at 854. It follows that claims premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13).

The broad language of the TMLA evidences legislative intent for the statute to have expansive application. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10) (defining "health care" to include "*any* act . . . by *any* health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." (emphasis added)); *see also Molinet*, 356 S.W.3d at 411 (noting that when interpreting statutes we strive to ascertain and give effect to the Legislature's intent). The breadth of the statute's text essentially creates a presumption that a claim is an HCLC if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement. *See Marks*, 319 S.W.3d at 662. But the presumption is necessarily rebuttable. In some instances the only possible relationship between the conduct underlying a claim and the rendition of medical services or

8

healthcare will be the healthcare setting (*i.e.*, the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both.

### B. Assaults and the TMLA

The elements of a civil assault mirror those of a criminal assault. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n.4 (Tex. 2010). Under the Penal Code, an assault occurs if a person:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE § 22.01(a). As relevant to the case before us, an assault occurs if a person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id.* § 22.01(a)(3).

Distinguishing between claims to which the TMLA applies and those to which it does not apply can be difficult when the plaintiff alleges an assault took place during a physical examination to which the patient consented. The scope of medical examinations generally are informed, and largely guided, by a combination of the patient's complaints and the examiner's training and professional judgment. During an examination for the purpose of diagnosing or treating a patient's condition, a medical or health care provider almost always will touch the patient intentionally. Frequently, examinations involve examiners touching the patient's body in places and in ways that

would be assaults were it not for the actual or implied consent of the patient in the context of the medical or health care relationship. And the examiner may need to examine parts of the patient's body that might not be anticipated by a person without medical or health care training. Such a situation is demonstrated by *Vanderwerff*, a case in which no expert report was filed. There, Kristina Beathard sought treatment from Eric Vanderwerff, a chiropractor, complaining of pain in various parts of her body. 239 S.W.3d at 407. Beathard later sued Vanderwerff, alleging that "during the course of a routine examination of her knee" he rubbed her genitals. *Id.* at 409. The trial court denied Vanderwerff's motion to dismiss for Beathard's failure to serve an expert report, but the court of appeals reversed. *Id.* In doing so, it noted that Beathard had marked an anatomical drawing to show her areas of pain, and those markings indicated she was having pain not only in her neck, wrists, ankle, and left knee, but also running from her knee to her upper thigh. *Id.* The court of appeals set out the issue and its conclusion as follows:

> The threshold questions raised by Beathard's pleadings are whether she consented to treatment and whether Vanderwerff's examination was within the scope of a chiropractic examination. Was the examination a "routine" examination as Beathard contends? These questions cannot be answered without reference to the standard of care required of a chiropractic provider.

*Id.* In essence, the court of appeals recognized that an expert report was necessary because Vanderwerff's conduct in the overall context of the chiropractic examination could have been part of the care he was rendering pursuant to Beathard's consent to be examined and treated for pain which, in part, she reported extended from her knee to the upper thigh.

In balancing the respective rights of and burdens on claimants and medical and healthcare defendants, the Legislature has determined that requiring claimants to bear the expense of obtaining

10

and serving expert reports early in HCLCs is preferable to having parties incur substantial expense and devote considerable time to developing claims through discovery and trial preparation before a trial court determines which ones are meritless. *See Scoresby*, 346 S.W.3d at 552, 556; *Palacios*, 46 S.W.3d at 877. However, we fail to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which a plaintiff complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care" even though the conduct occurred in a health care context. *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13); *see also* Tex. Gov't Code § 311.021 ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended . . . .").

We conclude that a claim against a medical or health care provider for assault is not an HCLC if the record conclusively shows that (1) there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place. *See Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (per curiam) (holding that a plaintiff's battery claim was an HCLC because "[t]here may [have] be[en] reasons for providing treatment without specific consent that do not breach any applicable standard of care[, and] [t]he existence or nonexistence of such reasons is necessarily the subject of expert testimony"); *Buck v. Blum*, 130 S.W.3d 285, 289-90 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (concluding that a neurologist's conduct was not in the course and scope of his

11

employment when a patient complained that the neurologist placed his penis instead of a metal weight in the patient's hand during a neurological examination).

## IV. Expert Reports

The TMLA's expert report requirements do not require a trial court to make a merits determination regarding whether the claim is an HCLC. *See Murphy*, 167 S.W.3d at 838 (explaining that the requirement is a threshold over which a plaintiff must proceed); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) ("[T]he expert report must represent only a good-faith effort to provide a fair summary of the expert's opinions. A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute."). Nor does a determination that the TMLA's expert report requirements apply to a claim affect other matters such as whether a physician or health care provider may be subject to professional sanctions or criminal prosecution for the conduct on which a plaintiff bases a claim. *See Vanderwerff*, 239 S.W.3d at 407 n.1 (noting that in addition to a civil case alleging sexual assault against a chiropractor for rubbing the patient's genitals during an examination, a criminal complaint was filed against the defendant). The requirements are meant to identify frivolous claims and reduce the expense and time to dispose of any that are filed. *See Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011) ("The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." (citation omitted)); *see also* TEX. CIV. PRAC. & REM. CODE § 74.351(k), (t) (providing that an expert report is not admissible in and shall not be used during depositions, trial, or other proceedings, nor shall it be referred to for any purpose absent the plaintiff's using it in a way other than serving it pursuant to the 120-day service requirement of

12

section 74.351(a)); *id.* § 74.351(s) (limiting discovery until the expert report and curriculum vitae of the expert have been served).

In *Palacios* we held that the TMLA's language requires a trial court to determine a report's adequacy from its four corners. 46 S.W.3d at 878. The statute does not similarly limit what a trial court may consider when the question is whether a claim is subject to the TMLA's expert report requirements. Thus, when making that determination courts should consider the entire court record, including the pleadings, motions and responses, and relevant evidence properly admitted. This could include, but is not limited to, reports such as those the plaintiffs served here, medical records regarding examination or treatment of the plaintiff, if any, and the defendant's pleadings and explanation for how the contact at issue was part of medical care, or health care, or safety or professional or administrative services directly related to health care.

In light of the foregoing, we turn to the parties' contentions. We address the defendants separately, beginning with Dr. Loaisiga.

## V. Dr. Loaisiga

### A. Was an Expert Report Required?

Dr. Loaisiga argues that the plaintiffs were required to file an expert report because the alleged assaults occurred during the course of his administering medical services and all his actions were inseparable from the rendition of those medical services. The plaintiffs urge that, as the court of appeals held, their assault claims are not subject to the TMLA's expert report requirements because Dr. Loaisiga's acts do not implicate medical or health care services, regardless of whether medical treatment was occurring at the time of the assaults. Rather, they say the alleged acts of

13

assault are so inconsistent with the medical services Dr. Loaisiga was rendering, that the TMLA does not apply. In analyzing these arguments, we consider the entire record before the trial court and the overall context of the plaintiffs' suit, including the nature of the factual allegations in their pleadings, Dr. Loaisiga's contentions, and the motions to dismiss and responses.

We look first to the pleadings. The plaintiffs' pleadings contain allegations that except for Dr. Loaisiga's touching of their breasts, the examinations were routine. The pleadings do not assert a lack of proper care by Dr. Loaisiga other than his touching of their breasts. Further, the plaintiffs' brief on the merits posits that their pleadings made "no factual allegations that they were injured by any deficiencies in the medical care provided by Dr. Loaisiga."

The plaintiffs' claims are qualitatively similar to the claims in *Vanderwerff*. *See* 239 S.W.3d at 407. Like the plaintiff in *Vanderwerff*, the plaintiffs here allege an examining doctor inappropriately touched parts of their bodies during the course of otherwise routine examinations. *See id.* But because the determination of whether the plaintiffs were required to serve an expert report is to be made based on the whole record, we must also consider other relevant documents in the record and Dr. Loaisiga's contentions. In that regard, this case is distinguishable from *Vanderwerff*.

One distinguishing factor is that the plaintiff in *Vanderwerff* did not serve an expert report. Here the plaintiffs served a report that stated, in part:

> During a routine "sick" visit with a physician, a stethoscope may be utilized to listen to the heartbeat of the patient. However, in all applicable medical standards of care, it is unnecessary that a patient remove their brazier, nor is it necessary to cup, palm or touch the breast of a female patient either with the hand holding the stethoscope or the other hand not holding the instrument to listen to a heart beat.

14

Another distinction is that the record in *Vanderwerff* contained an anatomical drawing on which the plaintiff indicated to the chiropractor that she had pain running from her knee to her upper thigh. *Id.* at 409. Based on that document, the court of appeals recognized that the chiropractor's touching of, or near, the patient's genitals could have been part of the examination. *See id.* Here, the record does not contain any documents other than the plaintiffs' pleadings to shed light on the plaintiffs' symptoms or their complaints to Dr. Loaisiga. As discussed in more detail below, apart from allegations in the plaintiffs' pleadings, Dr. Kilgore's reports make no reference to the plaintiffs' medical records or the complaints they made to Dr. Loaisiga in the clinical setting.

The substance of the plaintiffs' complaint is that Dr. Loaisiga's conduct exceeded the scope of the examinations to which they consented, and Dr. Kilgore's report shows that it is unnecessary for a physician to touch a female patient's breasts during routine examinations of the type Dr. Loaisiga was performing. But even taken together, these aspects of the record do not conclusively rebut the presumptive application of the TMLA's expert report requirements. The lack of information to give context to Dr. Loaisiga's actions during the examinations—such as medical records, if any, reference to the medical records by Dr. Kilgore in his reports, or other information regarding the plaintiffs' symptoms and complaints to Dr. Loaisiga—prevents the plaintiffs from showing conclusively that the only relationship between the alleged touching of their breasts and Dr. Loaisiga's rendition of medical services was the physical location of the examinations at the offices of Sunshine Pediatrics and his status as a doctor or health care provider.

We conclude that the record does not contain sufficient information to conclusively show that Dr. Loaisiga's conduct could not have been part of the examination he was performing. But because

15

we are clarifying the standard for whether claims are subject to the TMLA's expert report requirements and the plaintiffs maintain that theirs are not, we conclude it is appropriate to remand the case to the trial court for further proceedings regarding that issue. *See Low v. Henry*, 221 S.W.3d 609, 621 (Tex. 2007) (remanding "to allow the parties to present evidence responsive to our guidelines").

## B. Adequacy of the Reports

The court of appeals did not consider whether Dr. Kilgore's reports are adequate to meet the requirements of section 74.351 because it concluded that no expert reports were necessary. ___ S.W.3d at ___. If, on remand, the trial court determines expert reports are necessary under the TMLA, the adequacy of Dr. Kilgore's reports must be determined. Dr. Loaisiga preserved the adequacy issue in the courts below and briefed and argued it here. Therefore, without expressing any opinion as to whether the TMLA's expert report requirements will ultimately apply to this case, in the interest of judicial efficiency we address whether Dr. Kilgore's reports comply with the TMLA's requirements. *See* TEX. R. APP. P. 53.4; *Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 855 (Tex. 2011).

When a document purporting to be an expert report is timely served in an HCLC and is properly challenged, the trial court

> shall grant a motion challenging the adequacy of an expert report only if it appears
> to the court, after hearing, that the report does not represent an objective good faith
> effort to comply with the definition of an expert report in Subsection (r)(6).

TEX. CIV. PRAC. & REM. CODE § 74.351(*l*). To qualify as an objective good faith effort the report must (1) inform the defendant of the specific conduct the plaintiff questions, and (2) provide a basis

16

for the trial court to conclude that the plaintiff's claims have merit. *Scoresby*, 346 S.W.3d at 556 (citing *Palacios*, 46 S.W.3d at 879). A report meets the minimum qualifications for an expert report under the statute "if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id.* at 557. If a report meets these qualifications but is deficient, and an extension to cure is requested, the trial court may grant one thirty-day extension to cure the deficiencies. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c). But if a report does not meet the standard set in *Scoresby*, it is not an expert report under the statute, and the trial court must dismiss the plaintiff's claims if the defendant has properly moved for dismissal. TEX. CIV. PRAC. & REM. CODE § 74.351(b).

Dr. Loaisiga advances three arguments why the case should be dismissed if the TMLA's expert report requirements apply. The arguments all substantively rely on his position that Dr. Kilgore's reports cannot be good faith attempts to provide expert reports because they merely assume the truth of what is in the plaintiffs' pleadings. Dr. Loaisiga first argues that Dr. Kilgore's assuming the truth of the plaintiffs' pleadings results in the reports being wholly speculative because the pleadings are merely unverified allegations. He also asserts that the reports (1) improperly require the trial court to assume facts outside their four corners and (2) do not in good faith identify and state the breach and causation elements required to be contained in expert reports because they are conditioned on certain facts being true. In response, the plaintiffs maintain that Dr. Kilgore was entitled to rely on their pleadings as true. They posit that whether their allegations are credible is a matter for the jury to decide, not a matter for the trial judge in passing on whether the reports are a

17

good faith effort to comply with the TMLA requirements. To a certain extent we agree with both parties.

The fact that pleadings are not verified does not relieve attorneys and parties from their obligation to avoid including groundless or bad faith allegations in them. To the contrary, including such allegations in pleadings is sanctionable. *See* TEX. R. CIV. P. 13. Thus, we do not see why an expert, in formulating an opinion, should be precluded from considering and assuming the validity of matters set out in pleadings in the suit, absent a showing that the pleadings are groundless or in bad faith or rebutted by evidence in the record.

On the other hand, the purpose of an expert report is to give the trial court sufficient information within the four corners of the report to determine if the plaintiff's claim has merit. *Scoresby*, 346 S.W.3d at 554, 556. If an expert could formulate an adequate expert report by merely reviewing the plaintiff's pleadings and assuming them to be true, then artful pleading could neutralize the Legislature's requirement that expert reports demonstrate the plaintiff's claims have merit. *See id.* That is because the facts and circumstances alleged in the plaintiff's pleadings might omit or misstate, inadvertently or otherwise, matters critical to a valid expert opinion. An expert report based only on the plaintiff's pleadings could mask the context of the medical services or health care rendered. Significant matters involved in the rendition of the care, such as the patient's complaints or the health care provider's findings, could warrant investigation and examination beyond that which might otherwise seem to have been appropriate, yet be unknown to the expert. If such matters were not in the plaintiff's pleadings the expert would not have considered them, the expert report would not reference them, and because they are outside the four corners of the report,

18

the trial court could not consider them in deciding whether the plaintiff's claims have merit. That is not what we believe the Legislature intended. *See id.* at 552-54.

We conclude that in formulating an adequate expert report under section 74.351, an expert may consider and rely on the plaintiff's pleadings, but the expert must consider more than the pleadings. How much more will depend on the particular circumstances of the claim. But we fail to see how in most instances, and particularly in claims involving the scope of an examination, an expert report could be adequate unless the expert at least considered and commented on the patient's medical records to the extent the records and their contents—or lack of appropriate contents—are relevant to the expert's opinion.

In this case Dr. Kilgore's reports and curriculum vitae demonstrate that he is a trained and practicing physician. He has sufficient expertise in the medical field to be qualified to provide an adequate expert report. *See Scoresby*, 346 S.W.3d at 557. The reports also demonstrate that he is of the opinion the plaintiffs' claims have merit. *See id.* But his failure to consider any matters other than the plaintiffs' pleadings in formulating his opinion make his existing reports inadequate to comply with section 74.351's expert report requirements. On the other hand, we disagree with Dr. Loaisiga's position that the deficiencies in Dr. Kilgore's reports require dismissal of the plaintiffs' claims against him. The reports meet the standard set out in *Scoresby*, and the plaintiffs requested a thirty-day extension to cure defects in them in the event they were deficient. Accordingly, if on remand the trial court determines that the TMLA's expert report requirements apply to this case, the court should consider the plaintiffs' request for an extension of time to cure deficiencies in the reports as to Dr. Loaisiga. *See id.*

19

## VI.  The P.A.

### A.  Was an Expert Report Required?

The plaintiffs' petition names the P.A. as a defendant and prays for judgment against it, but the pleading does not mention the P.A. otherwise.  The court of appeals concluded that the TMLA did not apply to the P.A., given the lack of "allegations of medical negligence or otherwise" against the P.A. ___ S.W.3d at ___.  We disagree with that conclusion.

The court of appeals focused on the latter part of the first sentence of section 74.351(a), emphasizing the requirement of an expert report "for each physician or health care provider *against whom a liability claim is asserted*." ___ S.W.3d at ___ (quoting TEX. CIV. PRAC. & REM. CODE § 74.351(a)).  However, that portion of the statute's text must be read in conjunction with the words that surround it.  *See Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 395 (Tex. 2011) (explaining that we interpret statutory text according to its plain meaning and context unless such a construction leads to absurd or nonsensical results).  The beginning of the sentence the court of appeals quoted refers to "a health care liability claim." TEX. CIV. PRAC. & REM. CODE § 74.351(a).  Reading the sentence as a whole shows that "a liability claim" is merely an abbreviated reference to "a health care liability claim," which is elsewhere defined in the TMLA as "a cause of action." *Id.* § 74.001(a)(13); *see also Mokkala v. Mead*, 178 S.W.3d 66, 71 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("A 'health care liability claim' is a 'cause of action,' not a lawsuit.").  And as we have explained, a "cause of action" means the "fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *In re Jorden*, 249 S.W.3d at 421 (citation omitted).  Therefore, the expert report requirements are triggered when a plaintiff

20

names a person or entity as a defendant and seeks to obtain relief from that defendant based on facts that possibly implicate the TMLA.

This construction of the statute furthers the purpose of the expert report requirements. *See Scoresby*, 346 S.W.3d at 554; *see also Molinet*, 356 S.W.3d at 411 (stating that our objective in construing a statute is to ascertain and give effect to the Legislature's intent). If a plaintiff could name and seek judgment against a medical or health care provider based on facts that fall within the TMLA's coverage without triggering the 120-day deadline for serving an expert report, it would open the door to artful pleading and undermine the Legislature's goal of accelerating the disposition of non-meritorious HCLCs. *See Scoresby*, 346 S.W.3d at 554; *Diversicare*, 185 S.W.3d at 854.

In this case the plaintiffs made the P.A. a party to the case and sought judgment against it based on no facts other than those underlying their claims against Dr. Loaisiga. The P.A. is named after Dr. Loaisiga, and he has not disputed the plaintiffs' allegation that he was and is its sole officer and director. The plaintiffs' response to the P.A.'s motion to dismiss alleged that Dr. Loaisiga acted both individually and as the P.A. when he assaulted the plaintiffs and there "is no differentiation between the two."

As we discuss above, the determination of whether a plaintiff's expert report is adequate is not a merits determination, but rather a preliminary determination designed to expeditiously weed out claims that have no merit. In this case the pleadings and record were sufficient to make the plaintiffs' claims as to the P.A. clear: they claimed it was vicariously liable for Dr. Loaisiga's conduct. The P.A. could have excepted to and sought clarification of the pleadings if it desired to have them clarified, but it did not do so.

21

We conclude that if the plaintiffs' claims assert HCLCs, then the TMLA's expert report requirements apply to the claims against the P.A. just as they do to the claims against Dr. Loaisiga individually.

## B. Adequacy of the Reports

The court of appeals did not consider whether Dr. Kilgore's reports are adequate to meet the requirements of section 74.351 as to the P.A. ___ S.W.3d at ___. We address the issue for the same reasons expressed above as to Dr. Loaisiga. *See* TEX. R. APP. P. 53.4; *Reid Road Mun. Util. Dist. No. 2*, 337 S.W.3d at 855.

Dr. Kilgore stated in his September 3, 2009 report that "[a]ll opinions expressed and contained in my previous report are adopted in this supplemental report and are also applicable to [the P.A.]." His previous report demonstrated that he is a trained and practicing physician who holds the opinion that Dr. Loaisiga's conduct is implicated and the plaintiffs' claims against Dr. Loaisiga have merit. *See supra* Part V.B. But, as we explain above, Dr. Kilgore's previous report is not adequate to comply with section 74.351 because he considered only the plaintiffs' pleadings in formulating his opinions. By adopting the previous report, the supplemental report meets the minimal standard set out in *Scoresby*, just as the original report did, but it is deficient as to the P.A., just as the original report was deficient as to Dr. Loaisiga. So, if on remand the plaintiffs' claims are determined to be HCLCs subject to the TMLA's expert report requirements, the trial court should consider the plaintiffs' request for an extension of time to cure the reports as to the P.A. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c).

## VII.  Conclusion

We reverse the judgment of the court of appeals.  We remand the case to the trial court for further proceedings in accordance with this opinion.  *See id.*; *Scoresby*, 346 S.W.3d at 557.

_____
Phil Johnson
Justice

**OPINION DELIVERED:**  August 31, 2012