**Reversed and Remanded and Memorandum Opinion filed July 9, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00213-CV

---

### AMIR A. CHAMIE, Appellant

### V.

### MEMORIAL HERMANN HEALTH SYSTEM D/B/A UNIVERSITY PLACE RETIREMENT HOME, Appellee

---

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2013-32676A**

---

## NO. 14-14-00226-CV

---

### AMIR A. CHAMIE, Appellant

### V.

### CROTHALL HEALTHCARE, INC., Appellee

---

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2013-32676**

---

# MEMORANDUM OPINION

In these related appeals, Amir A. Chamie appeals from the trial court's dismissal of personal injury claims for failure to timely file expert reports pursuant to section 74.351 of the Texas Medical Liability Act (TMLA). Tex. Civ. Prac. & Rem. Code § 74.351. As will be discussed below, Chamie alleged negligence against both Memorial Hermann Health System d/b/a University Place Retirement Home, Inc. and Crothall Healthcare, Inc. related to a slip-and-fall incident Chamie allegedly suffered while visiting his grandmother in a retirement home. Guided by the Texas Supreme Court's recent opinion in *Ross v. St. Luke's Episcopal Hospital*, No. 13–0439, 2015 WL 2009744 (Tex. May 1, 2015), we reverse the judgments in these two cases and remand them to the trial court.

## *Background*

Chamie initially filed suit against Memorial Hermann but subsequently amended his petition to include Crothall as a defendant. Chamie alleges that on or about September 13, 2011, he was visiting his grandmother at the University Place Retirement Home when he "was seriously injured as a result of a dangerous condition in that water was left upon the floor without indication of wet floor signs." He further claims that his injuries were the "direct result of a fall that was proximately caused by th[is] dangerous condition . . . which Defendants knew or, in the exercise of ordinary care, should have known existed." He additionally alleges that the defendants, their agents, or their employees were negligent in numerous possible ways, including permitting the floor to become slippery with liquid, allowing the condition to continue unabated, and failing to warn of the condition despite the fact that it had continued for such a length of time that in the exercise of ordinary care they should have noticed and corrected the condition. Chamie further claims negligence based on the alleged failures to inspect, maintain the floor in a reasonably safe condition, give adequate warnings, provide adequate

2

lighting, or discover and remove the liquid within a reasonable time.

Memorial Hermann acknowledges that it owns the retirement home where Chamie claims to have been injured, and Crothall acknowledges that at the time of the alleged incident, it "was under contract with Memorial Hermann to provide environmental services, *e.g.* janitorial and cleaning services" at the facility. Both appellees otherwise generally deny Chamie's allegations.

Memorial Hermann filed a motion to dismiss Chamie's claims, asserting that the claims are health care liability claims (HCLCs) and Chamie failed to timely file an expert report as required by section 74.351 of the TMLA. The parties offered no evidence in connection with this motion beyond an affidavit in support of attorney's fees for Memorial Hermann. The trial court granted the motion, severed Chamie's claims against Memorial Hermann from those against Crothall, and rendered a final judgment dismissing Chamies's claims against Memorial Hermann. In the original action, Crothall then filed a substantially similar motion to dismiss. Crothall attached to its motion an affidavit from its Director of Environmental Services, which confirmed in general terms that Crothall provides housekeeping and cleanliness services at University Place. The trial court's order granting that motion and dismissing Chamie's claims against Crothall was effectively a final judgment as it disposed of all remaining claims and parties in that action. The current appeals followed.

### *Governing Law*

In two issues in each of these appeals, Chamie contends that the trial court erred in dismissing his claims against Memorial Hermann and Crothall because his claims are not HCLCs and, thus, no expert report was required to be filed under section 74.351. The TMLA defines a "health care liability claim" as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). Pursuant to section 74.351, a claimant bringing an HCLC must, "not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports." *Id*. § 74.351(a)). If an expert report has not been served within the 120–day deadline and the defendant physician or health care provider files a motion to dismiss, the trial court must "dismiss[ ] the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim," and award the physician or health care provider reasonable attorney's fees and costs of court. Tex. Civ. Prac. & Rem. Code § 74.351(b).[1]

Appellate courts generally review a trial court's ruling on a motion to dismiss under section 74.351 for an abuse of discretion. *Rosemond v. Al–Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011). However, to the extent that our review involves a matter of statutory construction, the issue is a legal question we review de novo. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). Accordingly, in determining whether Chamie's allegations constitute HCLCs governed by the TMLA, we apply a de novo standard of review. *Id*.

While this appeal was pending, the Texas Supreme Court resolved a split among the courts of appeals concerning whether and to what extent claimed departures from accepted standards of safety by a health care provider must be related to the provision of health care to constitute an HCLC governed by the

---

[1] For purposes of this opinion, we assume without deciding that Memorial Hermann and Crothall both qualify as health care providers under the TMLA.

4

TMLA.  *See Ross*, 2015 WL 2009744, at *2.  Accordingly, our analysis is guided by the *Ross* court's interpretation of the scope of the TMLA and its instructions for determining whether a plaintiff's claim constitutes a health acre liability claim.

The facts addressed in *Ross* are similar but not identical to those presented here.  In *Ross*, a visitor to a hospital sued the hospital on a premises-liability theory after she slipped and fell on allegedly wet flooring near the lobby exit doors.  *Id*. at *1.  The hospital moved to dismiss Ross's claim, asserting that the claim was an HCLC and Ross had not filed an expert report.  *Id*.  The trial court granted the hospital's motion, and this court affirmed, following the binding precedent of *Williams, supra*, and concluding that a claimed departure from a safety standard need not be directly related to health care in order to come within the TMLA.  *See id*.; *Ross v. St. Luke's Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613, at *1-2 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013), *rev'd*, 2015 WL 2009744.

The supreme court then reversed our judgment, holding that for a safety-based claim against a health care provider to be an HCLC "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care."  *Ross*, 2015 WL 2009744, at *6.  The court further explained that "[t]he pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety."  *Id*.

Acknowledging that "the line between a safety standards-based claim that is not an HCLC and one that is an HCLC may not always be clear," the court articulated seven non-exclusive factors to aid in analyzing whether a safety standards-based claim is substantively related to the defendant's providing of medical or health care and is therefore an HCLC:

5

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id*.

### *Analysis*

As in *Ross*, Chamie's negligence claims are based on alleged violations of safety standards; Chamie makes no allegations specifically regarding the provision of health care by appellees and does not state where he slipped and fell at the retirement home.[2]  Appellees likewise have not asserted any connection between Chamie's safety-related claims and the provision of health care, other than to assert that they (the appellees) are health care providers.[3]  As the *Ross* court made clear,

---

[2]  In its appellate briefing, Memorial Hermann suggests that the alleged incident occurred in a patient's room; however, Memorial Hermann offers no record citation in support of this suggestion, and the record contains no evidence supporting it.  The suggestion therefore plays no role in our analysis.

[3] As Memorial Hermann states in its brief:  "Keeping the floors safe and free of hazards is a safety claim that meets the fundamental needs of both its patients and visitors . . . ."  Both

"[a] safety standards-based claim does not come within the TMLA's provisions just because the underlying occurrence took place in a health care facility, the claim is against a heath care provider, or both." *Id*. at *5 (citing *Loaisiga v. Cerda*, 379 S.W.3d 248, 257 (Tex. 2012)).

Applying the non-exclusive considerations set forth in *Ross*, we conclude that no substantive nexus exists between the safety standards appellees allegedly violated and the provision of health care. The records before us do not show that the alleged negligence—leaving water on the floor—occurred in the course of performing tasks with the purpose of protecting patients from harm. *Cf. Ross*, 2015 WL 2009744, at *6 (holding that cleaning a floor near exit doors was not shown to be for the purpose of protecting patients). Similarly, there is no indication in the records that the alleged negligence occurred in a place where patients might be while receiving care. *See Lout v. The Methodist Hosp.*, No. 14-14-00302-CV, 2015 WL 3878135, at *3 (Tex. App.—Houston [14th Dist.] June 23, 2015, no pet. h.) (noting that even though incident allegedly occurred in hospital's "heart failure unit," there was no evidence in the record to substantiate that the plaintiff slipped in an area where patients might be while receiving treatment).

Chamie's allegation that he was visiting his grandmother at the time of the incident indicates that he was not seeking, receiving or providing health care at the time. *See id*. (holding hospital visitor was not seeking or receiving health care at the time she fell). Furthermore, the records include no indication that the alleged negligence concerning water on the floor implicated safety standards arising from professional duties appellees owed as health care providers, that any instrumentality involved in the negligence was of a type used in providing health

appellees took the position that there needed to be no nexus between a safety claim against a health care provider and the provision of health care for the claim to be an HCLC.

7

care, or that the alleged negligence occurred in the course of taking action or failing to take action necessary to comply with a requirement set for health care providers by governmental or accrediting agencies. *See Ross*, 2015 WL 2009744, at *6; *see also Lance Thai Tran, DDS, PA v. Chavez*, No. 14-14-00318-CV, 2015 WL 2342564, at *3-4 (Tex. App.—Houston [14th Dist.] May 14, 2015, no pet. h.) (mem. op.) (coming to similar conclusions in case involving wet flooring in a dentist's office).

## *Conclusion*

Concluding that the records in these two cases do not demonstrate a substantive nexus between the safety standards Chamie alleged appellees breached and the provision of health care, we sustain Chamie's issues, reverse the trial court's two judgments, and remand both cases for further proceedings in accordance with this opinion.


/s/     Martha Hill Jamison
            Justice


Panel consists of Justices Jamison, Busby, and Brown.