# Supreme Court of Texas

No. 23-0317

Maurice N. Leibman M.D.,

*Petitioner*,

v.

Cleveratta Waldroup and James Waldroup, Individually and as
Next Friends of R.W., a Minor,

*Respondents*

On Petition for Review from the
Court of Appeals for the First District of Texas

JUSTICE HUDDLE, joined by Chief Justice Blacklock, Justice
Bland, and Justice Sullivan, dissenting.

The lamentable facts of this case do not justify disregarding
statutory language and our precedents. For over a decade this Court
has held, consistent with the Texas Medical Liability Act's "expansive
application," *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012), that
when a negligence claim against a physician is inseparably intertwined
with health-related services, it is a health care liability claim (HCLC).
*See Yamada v. Friend*, 335 S.W.3d 192, 197 (Tex. 2010) ("[I]f the
gravamen or essence of a cause of action is [an HCLC], then allowing

the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements."). We have rightly recognized that if the *facts* as pleaded (as opposed to the plaintiff's characterization of a claim) could support an HCLC, the claim is subject to the Act. *Id.*; *see also Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 838 (Tex. 2022) ("[T]he claimant cannot avoid the Act by splitting claims into both [HCLCs] and other types of claims such as ordinary negligence claims or by amending her pleading to recast her claims." (citations and internal quotation marks omitted)).

Today, the Court departs from these precedents and welcomes artful pleading to avoid the Act's application. The Court allows the Waldroups to excise phrases from Dr. Leibman's letters, which he provided in the course of rendering medical care to his patient, and reframe them to allege a negligence claim independent from that medical care. The Waldroups' claim against Dr. Leibman should be dismissed because it is premised on facts inseparably linked to Dr. Leibman's rendition of medical care. Because the Court concludes otherwise, I respectfully dissent.

## I. The TMLA is broadly construed.

Chapter 74 of the Civil Practice and Remedies Code—the TMLA—requires that "[i]n a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed . . . , serve on that party . . . one or more expert reports." TEX. CIV. PRAC. & REM. CODE § 74.351(a). A claimant's failure to timely serve the expert report "shall" result in an order that "(1) awards to the

affected physician . . . reasonable attorney's fees and costs of court incurred by the physician . . . ; and (2) dismisses the claim with respect to the physician . . . with prejudice." *Id.* § 74.351(b).

The Act defines an HCLC as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to" the claimant. *Id.* § 74.001(a)(13). "Medical care" is defined as "any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care [or] treatment." *Id.* § 74.001(a)(19). The Occupations Code defines "[p]racticing medicine" as

> diagnos[ing], treat[ing], or offer[ing] to treat a mental or physical disease or disorder . . . by any system or method, or the attempt to effect cures of those conditions, by a person who: (A) publicly professes to be a physician . . . ; or (B) directly or indirectly charges money . . . for those services.

TEX. OCC. CODE § 151.002(a)(13). Whether a claim is an HCLC is a question of law we review de novo. *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023).

To determine whether the Waldroups' claim is an HCLC, we look to the underlying nature of the claim. *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016). The Court "should consider the entire court record, including the pleadings, motions and responses, and relevant evidence properly admitted." *Loaisiga*, 379 S.W.3d at 258.

A claim "alleges a departure from accepted standards of medical care," and thus is an HCLC, "if the act or omission complained of is an inseparable part of the rendition of medical services." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005); *see also Gaytan*, 640 S.W.3d at 846 ("[A] claim constitutes [an HCLC] when the conduct complained of is an 'inseparable or integral part of the rendition of health care.'" (quoting *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 180 (Tex. 2012))).

"Artful pleading" by recasting an HCLC as a non-HCLC does not transmute the underlying nature of the claim. *Yamada*, 335 S.W.3d at 196. If, based on the totality of the circumstances, the underlying nature of a claim makes it an HCLC, it is impermissible to split it to avoid the Act's application. *See id.* at 197 ("[I]f the gravamen or essence of a cause of action is [an HCLC], then allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements."). In other words, claims that could be independently asserted as ordinary negligence claims but are inseparably intertwined with medical services are HCLCs. *See id.* (acknowledging claims that could be asserted as ordinary negligence are HCLCs if "the specific acts and omissions of the [defendant] were an inseparable part of the health and medical transaction"). When a claim is premised on facts that do, or even could, support an HCLC, that claim is an HCLC, regardless of the pleading's specific allegations. We have recognized that a contrary holding would defeat the purposes of the TMLA because a claimant could easily isolate a specific act by a health

4

care provider that could be characterized as distinct from medical care or health care:

> Clearly, particular actions or omissions underlying [HCLCs] can be highlighted and alleged to be breaches of ordinary standards of care. . . . Plaintiffs will be able to entirely avoid application of the TMLA by carefully choosing the acts and omissions on which to base their claims and the language by which they assert the claims.

*Id.*

The TMLA's broad language "essentially creates a presumption that a claim is an HCLC if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Loaisiga*, 379 S.W.3d at 256. When the presumption applies, it is the claimant's burden to rebut it and show that the claim is not an HCLC. *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019).

## II. The Waldroups' claim against Dr. Leibman is an HCLC.

The Court concludes that the Waldroups' claim against Dr. Leibman cannot be an HCLC because, it asserts, no expert medical testimony is required to establish the standard of care and any breach thereof. The Court reaches that conclusion by accepting the Waldroups' characterization that the only alleged negligence concerns Dr. Leibman's statements about the "training, behavior and legal status" of Kingston, one of Dr. Leibman's patient's service animals. The Court thus limits the operative facts to what the Waldroups artfully allege was the breach of care, i.e., Dr. Leibman's isolated comments about Kingston's temperament.

5

But as this Court acknowledged in *Faber*, how a court "define[s] the universe of relevant facts . . . can significantly affect the outcome of the analysis." 671 S.W.3d at 885. "Courts must focus on the set of operative facts 'underlying the claim' that are *relevant* to the alleged injury, not on how 'the plaintiff's pleadings describ[e] the facts or legal theories asserted.'" *Id.* (emphasis added) (alteration in original) (quoting *Loaisiga*, 379 S.W.3d at 255); *see also Loaisiga*, 379 S.W.3d at 255 (defining "cause of action" under the TMLA as the "fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief" (quoting *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008))).

The Waldroups, and the Court, limit the "operative facts" to Dr. Leibman's comments on Kingston's "training, behavior and legal status." But we have previously observed that even though a claim may be pleaded in a way that focuses on an act of ordinary negligence, if the act is an inseparable part of medical services, it is an HCLC. For example, in *Yamada*, we described a case in which an embryologist dropped a tray of embryos, destroying most of them. 335 S.W.3d at 197 (discussing *Inst. for Women's Health, P.L.L.C. v. Imad*, No. 04-05-00555-CV, 2006 WL 334013 (Tex. App.—San Antonio Feb. 15, 2006, no pet.)). Even though "the care required in carrying a tray of embryos without dropping it could have been asserted as ordinary negligence" that would not require a medical expert, we agreed with the court of appeals' holding that the embryologist's acts and omissions were an inseparable part of health and medical services and thus the claim was an HCLC. *Id.*

The same is true here. Every letter[1] written by Dr. Leibman for his patient references her diagnosed anxiety and describes a course of treatment. Isolating individual statements in the letters and asserting only those statements as acts of ordinary negligence does not sever them from Dr. Leibman's medical services. What underlies the Waldroups' claim and is relevant to their alleged injury is Dr. Leibman's rendition of medical services through the letters. A plaintiff cannot cherry-pick statements and plead only those statements as independent acts of negligence to avoid the Act's application. *See id.*; *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004) ("Plaintiffs cannot use artful pleading to avoid the [statute's] requirements when the essence of the suit is [an HCLC].").

By focusing exclusively on isolated facts highlighted by the Waldroups, the Court ignores our precedents' broad construction of the Act and the presumption that claims against a physician "based on facts implicating the defendant's conduct during the patient's care [or] treatment . . . are HCLCs." *Loaisiga*, 379 S.W.3d at 252. No one disputes that Dr. Leibman is a licensed practicing physician who wrote the letters in the context of providing medical care to his patient, Romano. To rebut the HCLC presumption, the Waldroups must present evidence showing, or the record must indicate, that their claim does not relate to Dr. Leibman's "departure from accepted standards of medical

---

[1] Although the record contains only one letter written by Dr. Leibman, dated July 15, 2019, several other letters were summarized or directly quoted in a police report. The Waldroups do not dispute the other letters' existence or the report's characterization of their substance; indeed, they attached a copy of the police report to their response in the trial court.

7

care or health care" in treating Romano's general anxiety disorder. *Gaytan*, 640 S.W.3d at 844 (quoting *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 759–60 (Tex. 2014)). To determine whether the Waldroups have met this burden, we first examine whether "expert medical or health care testimony is needed to establish the requisite standard of care and breach." *Bioderm*, 426 S.W.3d at 760. If so, the claim is an HCLC, and the Waldroups have failed to meet their burden. *Tex. W. Oaks Hosp.*, 371 S.W.3d at 182. But even if expert testimony is not needed, we "consider the totality of the circumstances, as a claim may still be [an HCLC]." *Bioderm*, 426 S.W.3d at 760; *see also Weems*, 575 S.W.3d at 366 n.36.

The Waldroups failed to rebut the HCLC presumption. The letters were all prepared by a physician for his patient and directly refer to her medical condition. As alleged by the Waldroups, the facts could have supported a claim that Dr. Leibman breached a medical standard of care by providing opinions in the course of his medical care that exceeded his qualifications as a physician. Expert medical testimony would be necessary to establish the appropriate scope of the written opinions that a physician may give when providing medical care and whether the contents of Dr. Leibman's letters breached that standard. And the Waldroups acknowledged to the trial court that Dr. Leibman's status *as a physician* was a crucial part of their negligence claim: "It makes a difference when Dr. Leibman says that Kingston is a 'service animal', is 'certified' or does particular tasks. His authority encouraged

8

Ms. Romano to hold Kingston out as a 'service animal' . . . ."[2] Dr. Leibman's statements, and the letters generally, were made in the context of his medical care—his treatment for Romano's diagnosed anxiety. *See* TEX. OCC. CODE § 151.002(13) (defining "[p]racticing medicine" to include a physician's diagnosis, treatment, or attempt to cure a patient's condition).

The Court contends that "[a]nyone—with or without medical training—could have described the dog's behavior and temperament." *Ante* at 18. Perhaps, but that misses the point. A physician (Dr. Leibman) made these statements in the course of providing medical care to his patient (Romano), and as the Waldroups concede, the fact that he was a physician was significant. Based on these facts, the Waldroups could have pleaded their claim in a way that would have required expert medical testimony to establish the standard of care and whether Dr. Leibman breached that standard. Because the facts alleged by the Waldroups could give rise to an HCLC, their claim is an HCLC even though they pleaded their claim so as to avoid the Act. *Gaytan*, 640 S.W.3d at 838; *Yamada*, 335 S.W.3d at 197.

I acknowledge there are instances where a physician's purported negligence is so unrelated to the rendition of medical care that it is not an HCLC. *See Loaisiga*, 379 S.W.3d at 256 (recognizing the HCLC

---

[2] The Waldroups likewise concede in their briefing in this Court that their claim relies on Dr. Leibman's status as a physician. *See* Respondents' Brief in Response at 11 ("Dr. Leibman acted outside his qualifications, capacities, and role as a doctor in his representations of Romano's dogs."), 20 ("It is these statements on which Leibman slapped his 'MD' as a[n] *imprimatur*, that are the basis of Waldroup's claims against Leibman.").

presumption would be rebutted if "the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare [is] the healthcare setting," i.e., "the physical location of the conduct"); *see also Reddy v. Veedell*, 509 S.W.3d 435, 438 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (holding a bicyclist's claim against a physician who struck her with his car while distracted was not an HCLC). This is not such a case. The gravamen of the Waldroups' claim is that a physician in the course of providing medical care to a patient for general anxiety disorder committed negligence by making statements he allegedly was not qualified to make. The Waldroups' attempt to limit the facts in this doctor–patient interaction to only those that they allege fall outside that relationship does not make their fiction a reality. Because the Waldroups failed to overcome the presumption that this claim is an HCLC, I would hold that it is and therefore is subject to the Act.

Because the Court concludes that the Waldroups' claim is not an HCLC, it does not address the alternative ground for affirmance advanced by the Waldroups. They argue that they were entitled to notice that Dr. Leibman believed the claim against him was an HCLC and would seek dismissal for failure to produce an expert report and that dismissal would violate their due process rights. They also contend dismissal would inappropriately reward Dr. Leibman for failing to disclose his defenses as Texas Rule of Civil Procedure 194.2 requires.

I am unpersuaded. The Act does not require the defendant to notify the parties of his belief that a claim is an HCLC or that he will seek dismissal absent a timely expert report. *See* TEX. CIV. PRAC. & REM.

CODE § 74.351; *cf. Walker v. Gutierrez*, 111 S.W.3d 56, 65 (Tex. 2003) (noting that an earlier version of the Act similarly "does not contain a requirement that a defendant provide a claimant with notice of noncompliance before that defendant moves to dismiss the case"). But the Act also makes clear that a court *must* dismiss a cause of action where an HCLC claimant fails to serve an expert report—there is no discretion. TEX. CIV. PRAC. & REM. CODE § 74.351(b). And while Rule 194.2 requires a party to provide "legal theories and, in general, the factual bases of the responding party's claims or defenses," TEX. R. CIV. P. 194.2(b)(3), the failure to satisfy Rule 194.2 cannot preclude dismissal under Section 74.351. *See* TEX. CIV. PRAC. & REM. CODE § 74.002(a) (providing that the Act controls in the event of a conflict with another law or rule of procedure).

## III. Conclusion

The TMLA has an expansive application that creates a rebuttable presumption that a claim against a physician grounded in facts connected to his conduct during the rendition of a patient's medical care is an HCLC. The Waldroups assert a claim against a physician based on letters he wrote in the course of providing medical care for his patient. Because expert medical testimony is necessary to establish the scope of statements a physician could properly include in such letters and whether the physician breached the standard of care by including statements he should have omitted, the Waldroups failed to rebut the presumption that their claim is an HCLC. Therefore, despite the Waldroups' attempt to circumvent the Act, I would hold that it requires

11

dismissal of their claim with prejudice for failing to timely serve an expert report. Because the Court holds otherwise, I respectfully dissent.

Rebeca A. Huddle
Justice

**OPINION FILED:** June 6, 2025

12