

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00375-CV

DARYL WILEY, AS NEXT FRIEND
OF MIKAYLA M. WILEY
AND THOMAS F. WILEY, MINOR
CHILDREN, AND THE
INDEPENDENT
ADMINISTRATOR OF THE ESTATE
OF KIOWANA HAYNES,
DECEASED, DEBORAH HARRIS,
INDIVIDUALLY, AS NEXT FRIEND
OF KIOWANA HAYNES,
DECEASED, AND CLARENCE
HAYNES, INDIVIDUALLY, AS NEXT
FRIEND OF KIOWANA HAYNES,
DECEASED

APPELLANTS

V.

BAYLOR ALL SAINTS MEDICAL
CENTER AT FORT WORTH

APPELLEE

----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

# MEMORANDUM OPINION[1]

----------

This is a health care liability suit. This appeal arises from the trial court's dismissal of the claims brought against Appellee Baylor All Saints Medical Center at Fort Worth (Hospital) by Appellants Daryl Wiley (as Next Friend of Mikayla M. Wiley and Thomas F. Wiley, Minor Children, and the Independent Administrator of the Estate of Kiowana Haynes, Deceased); Deborah Harris (Individually, as Next Friend of Kiowana Haynes, Deceased); and Clarence Haynes (Individually, as Next Friend of Kiowana Haynes, Deceased) (collectively Family). Family's claims arose out of the death of Kiowana Haynes. Mikayla is Kiowana's daughter, Thomas is Kiowana's son, and Daryl Wiley is their father and administrator of Kiowana's estate. Deborah Harris is Kiowana's mother, and Clarence Haynes is Kiowana's father.

In three issues, Family argues that the trial court abused its discretion by dismissing its claims against Hospital because the expert report that it served on Hospital was sufficient, and, alternatively, if the report was insufficient, that the trial court abused its discretion by not granting it thirty days to cure any deficiencies. Because we hold that the trial court abused its discretion by granting Baylor's motion, we reverse.

----

[1]*See* Tex. R. App. P. 47.4.

**Background**

In February 2011, Kiowana was admitted to Harris Methodist Hospital with pneumonia, acute exacerbation of asthma, and respiratory difficulty due to tracheal stenosis. Kiowana had a history of subglottic stenosis. While at that facility, Kiowana's condition initially improved but then worsened. A doctor there believed that Kiowana had an acute pulmonary edema secondary to the stenosis and that she would benefit from a laser procedure to dilate the stenosis. He recommended that she be transferred to Hospital for that procedure. Kiowana was transferred to Hospital in stable condition.

At Hospital, members of its ENT and pulmonology departments examined her. Kiowana was scheduled for bronchoscopy by Dr. Raja Sawhney, an otolaryngologist, with the possibility of performing a tracheal dilation procedure. The procedure was performed under general anesthesia. Dr. Adam Lenz was the attending anesthesiologist. Brian Birmingham, a certified registered nurse anesthetist, attempted to intubate Kiowana with a #6 endotracheal tube, but failed. A second attempt by Dr. Lenz was successful.

For reasons not clear from Kiowana's medical records, this tube was removed, and an attempt was made with a #8 tube. After an unspecified number of unsuccessful attempts with the #8 tube, intubation was tried with a #7 tube, also unsuccessful. The medical records are not clear as to who removed the #6 tube and tried the larger tubes. The #6 tube was then re-inserted.

Kiowana began deteriorating, and attempts at resuscitation were made, but she ultimately died. After Kiowana's death, the autopsy determined that her cause of death was a 2 cm x 2 cm perforation in the trachea wall.

Family also sued Hospital, NorthStar Anesthesia, P.A., Birmingham, Dr. Lenz, and Dr. Sawhney. Family's petition asserted acts of negligence against Hospital and alleged that "[Hospital] did not use the care, skill and diligence ordinarily used by the average health care organization in the same field of practice, acting in the same or similar circumstances." Family also alleged that Hospital was vicariously liable for the acts and omissions of its doctors, certified registered nursing anesthesiologists, nurses, and other healthcare providers.

Family served Hospital with the expert report of Dr. Neal Gerstein. Hospital filed a motion to dismiss Family's claims on the ground that the expert report was inadequate. Specifically, it objected that: (1) there was no indication that Dr. Gerstein was qualified on the basis of education, training, or experience to offer an expert opinion regarding the accepted standards of health care for Hospital; (2) Dr. Gerstein failed to identify any standard of care, breach of such standard of care, or causal relationship between an alleged breach and Kiowana's alleged injuries with respect to Hospital for any direct or vicarious liability theory; and (3) neither Dr. Gerstein nor Family adequately identified any relationship between Hospital and any other defendant.

Family filed a response and requested that if the trial court sustained Hospital's objections, they be granted a thirty-day extension to cure any

4

deficiencies. After a hearing, the trial court sustained Hospital's objections and dismissed Family's claims with prejudice.

## Standard of Care

We review a trial court's ruling on a motion to dismiss under section 74.351 for an abuse of discretion.[2] We also review a trial court's determination of an expert's qualifications for abuse of discretion.[3] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[4] An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances.[5]

## Analysis

In its brief, Family addresses each of the grounds asserted by Hospital, and we address those arguments in turn.

---

[2]*Maris v. Hendricks*, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied).

[3]*Granbury Minor Emergency Clinic v. Thiel*, 296 S.W.3d 261, 266 (Tex. App.—Fort Worth 2009, no pet.).

[4]*Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

[5]*E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

5

*1. The expert report did not have to name Hospital.*

In its first issue, Family argues that the expert report satisfied section 74.351 of the civil practice and remedies code[6] because for a health care liability claim against a hospital based on vicariously liability, that section does not require that the expert report specifically name the hospital.  We agree.

A plaintiff in a health care liability claim must provide an expert report in support of the claim.[7]  The reports must set out "a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."[8]  When a health care liability claim against a health care provider (such as a hospital) involves a vicarious liability theory, an expert report need only meet the statutory standards as to the health care provider's employee in order to satisfy the expert report requirement.[9]  A report that does so is sufficient to implicate the employer's conduct under the vicarious liability theory.[10] When the hospital is sued under a vicarious liability theory and an expert report is

---

[6]Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011 & Supp. 2013).

[7]*Id.* at § 74.351(a).

[8]*Id.* at § 74.351 (r)(6).

[9]*Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 632 (Tex. 2013).

[10]*Id.*; *see also Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008).

6

served on the hospital that meets the expert report requirements as to an employee of the hospital, the hospital has been made aware of the conduct that is at issue.[11]  Accordingly, when a hospital is sued under a vicarious liability theory, the expert report need not address acts or omissions by the hospital that breached a standard of care, and thus, the report need not discuss the hospital at all.  We sustain Family's first issue.

*2.  The expert report represents a good faith effort to comply with the statute.*

In its second issue, Family argues that the trial court abused its discretion by granting Hospital's motion to dismiss because Dr. Gerstein's report represented a good faith effort to comply with the definition of an expert report in section 74.351(r)(6).

An expert report must meet three elements:  (1) "it must fairly summarize the applicable standard of care"; (2) "it must explain how a physician or health care provider failed to meet that standard"; and (3) "it must establish the causal relationship between the failure and the harm alleged."[12]  If a report satisfies these elements as to any theory of liability against a defendant, the plaintiff may proceed on the suit against that defendant.[13]

---

[11]*See Potts*, 392 S.W.3d at 630 (stating that one purpose of the expert report is to inform the defendant of the specific conduct that the plaintiff has called into question).

[12]*Id.*

[13]*Id.*

7

Upon a defendant's motion, the trial court must dismiss the claims against the defendant if the plaintiff's expert report does not represent an objective good faith effort to comply with these requirements.[14] A report qualifies as an objective good faith effort if the report "(1) inform[s] the defendant of the specific conduct the plaintiff questions, and (2) provide[s] a basis for the trial court to conclude that the plaintiff's claims have merit."[15] The report "meets the minimum qualifications for an expert report under the statute 'if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated.'"[16]

Hospital asserted in its motion that Dr. Gerstein was not qualified to opine on a standard of care for Hospital. It also asserted in its motion that Dr. Gerstein's report did not meet the three elements of an expert report because it did not identify a relationship between Hospital and another defendant and it did not set out a standard of care for Hospital, a breach of that standard by Hospital, and causation. Hospital did not assert in its motion that the report did not adequately satisfy the three elements as to the defendants whose behavior

---

[14]Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*).

[15]*Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012).

[16]*Id.* (quoting *Scoresby v. Santillan*, 346 S.W.3d 546, 557 (Tex. 2011)).

Family bases its vicarious liability claim on, although it does so now in its appellee's brief.[17]

*2.1. Expert report requirements as to the expert's qualifications.*

Family argues that because it asserted only vicarious liability against Hospital, Dr. Gerstein needed to be qualified to opine on a standard of care, breach, and causation only as to the defendants for whose acts it seeks to hold Hospital vicariously liable. We agree.

Because in a vicarious liability case, an expert report is sufficient if it addresses the standard of care, breach, and causation applicable to the health care provider's employee,[18] the expert providing the report need only be qualified to give an opinion on the standard of care, breach, and causation as to that employee. There would be no point in requiring an expert to be qualified to give an opinion that the expert does not need to make; that is, if the expert is not required to give an opinion as to the standard of care of a health care provider,

---

[17] *See Maxwell v. Martin*, No. 14-11-00392-CV, 2012 WL 424888, at *7 (Tex. App.—Houston [14th Dist.] Feb. 9, 2012, no pet.) (mem. op.) (stating that it could not hold that the trial court abused its discretion by determining that the expert report demonstrated that the plaintiff's claims had merit despite deficiencies alleged by the defendant because the defendant did not inform the trial court of those deficiencies); *Williams v. Mora*, 264 S.W.3d 888, 890–91 (Tex App.—Waco 2008, no pet.) (holding that the defendant waived any objection to the expert report that was not made within the twenty-one day period provided in the statute for making objections and declining to consider the objections raised by the defendant for the first time on appeal).

[18] *See Potts*, 392 S.W.3d at 632.

there is no reason for the expert to be qualified to give an opinion as to the health care provider.

Hospital did not argue in its motion to dismiss that Dr. Gerstein was not qualified to give an opinion on the standard of care, breach, or causation as to any of the other defendants for which Family seeks to hold Hospital vicariously liable. Accordingly, we need not consider whether Dr. Gerstein's report and C.V. demonstrated that he was qualified to opine as to the standard of care owed by the other defendants, their breach of that standard of care, or causation.[19]

*2.2. Dr. Gerstein's report as to the standard of care, breach, and causation.*

Family argues that Dr. Gerstein's report satisfied the three elements of standard of care, breach, and causation as to Hospital because it met those requirements as to the defendants for which Family seeks to hold Hospital vicariously liable. It also argues that Dr. Gerstein was not required to identify a relationship between Hospital and the other defendants. We agree.

To establish Hospital's vicarious liability at trial, Family will have to establish Hospital's relationship with the party for whose acts or omissions Family seeks to hold Hospital responsible.[20] But section 74.351 does not require

---

[19] *See Maxwell*, No. 14-11-00392-CV, 2012 WL 424888, at *7; *Williams*, 264 S.W.3d at 890–91.

[20] *See Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.*, 127 S.W.3d 134, 138 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("Under the doctrine of respondeat superior, an employer is exposed to liability not because of any negligence on its part, but because of the employee's negligence in the scope of that employment.").

that the expert report establish that relationship.[21] All that is required is that the expert report set out the required elements as to a party for whom Family seeks to hold Hospital liable. If the petition informs a defendant hospital of which employee the plaintiff's claim is based on, the report sufficiently implicates the defendant by addressing that employee.[22]

Family asserted in its petition that Dr. Sawnhey was an employee or agent of Hospital. As noted above, Hospital did not assert in its motion to dismiss that the report did not adequately satisfy the three elements as to Dr. Sawnhey. On that basis alone, we can sustain Family's second issue as to the adequacy of the report.[23] But we go further to note that Dr. Gerstein's report set out a standard of care, a breach of that standard, and causation as to Dr. Sawnhey.

Dr. Gerstein set out a standard of care related to the placement of the intubation tubes. He stated that "[t]he surgical team knew or should have known the medical condition of their patient as it related to her narrowed trachea prior to the intubation procedure"; that "[i]t was incumbent upon *the ENT* to make the decision as to whether he could perform his surgical procedure with the 6.0 ETT [endotracheal tube] in place or possibly with the intermittent removal/replacement of the 6.0 ETT" and that "if a larger ETT was needed for some reason at that

---

[21]*See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (setting out the requirements for an expert report).

[22]*See Loaisiga*, 379 S.W.3d at 260.

[23]*See Williams*, 264 S.W.3d at 890–91.

11

point, the surgical plan should have been modified or the procedure should have been terminated"; that "*Dr. Sawhney*, as the surgeon, should not have placed or allowed the larger tubes to be placed into this patient's narrowed trachea"; that "[t]o remove the 6.0 ETT and attempt to insert an 8.0 ETT (outer diameter measurement of 11 mm) or a 7.0 ETT (outer diameter of 9.6 mm) into the severely narrowed airway of this patient was a deviation from the standard of care"; that "either *Dr. Sawhney* or the anesthesiology team removed the 6.0 ETT and unsuccessfully tried to insert first an 8.0 ETT and then followed unsuccessfully with a 7.0 ETT"; and that "[t]he attempts at placing each of the larger (7.0, 8.0) ETTs and reinserting of the 6.0 ETT fell below the standard of care for this patient and in all medical probability caused the fatal injury to her trachea."

As to causation, Dr. Gerstein stated that "[t]he medical record is unclear as to how many attempts to place the 7.0 ETT and 8.0 ETTs into the airway of the patient were made," but "[u]ndoubtedly, the force of attempting to insert and remove these larger ETTs and replacing the 6.0 ETT in all medical probability led to the lethal injury of the patient's perforated trachea." Thus, the report asserts that the injury to Kiowana's trachea led to her death, that injury occurred because of the force of attempting to insert, remove, and replace the ETTs, that under the applicable standard of care, Dr. Sawhney should not have allowed the larger tubes to be placed into Kiowana's trachea, and that Dr. Sawhney breached the standard of care by allowing the acts to occur. The report thus adequately

12

addresses the required elements as to Dr. Sawhney, and Family's petition clearly alleges that Hospital is responsible for the acts or omissions of Dr. Sawhney. We sustain Family's second issue.

3. *The trial court's denial of Family's request for a thirty-day extension.*

In its third issue, Family argues that the trial court abused its discretion by denying Family's request for a thirty-day extension of time to cure any deficiencies in Dr. Gerstein's expert report. Because we have held that Dr. Gerstein's report is adequate, we need not address this issue.

## Conclusion

Having sustained Family's first two issues, which are dispositive, we reverse the trial court's order dismissing Family's claims against Hospital, and we remand the cause to the trial court for further proceedings.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED: March 6, 2014

13