**COSMETIC PROCEDURES CLINIC OF NORTH DALLAS,**
Appellant,

v.

**Jeff AYUB, Appellee.**

**No. 05–11–01286–CV.**

Court of Appeals of Texas, Dallas.

June 22, 2012.

David Michael Walsh, IV, Lindsay E. Goodner, Constance (Misty) Broome, Amanda B. Montgomery, Chamblee, Ryan, Kershaw & Anderson, P.C., Dallas, TX, for Appellant.

Ryan H. Zehl, Jessica Van Rooy, Fitts Zehl, L.L.P., Houston, TX, for Appellee.

Before Justices MORRIS, O'NEILL, LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

This is an interlocutory appeal from an order denying appellant's motion to dismiss. Appellee Jeff Ayub sued appellant Cosmetic Procedures Clinic of North Dallas seeking damages for injuries he sustained during a laser hair removal procedure. For the following reasons, we affirm the trial court's order denying the motion to dismiss.

Ayub sought laser hair removal services from the Clinic. During a laser procedure, he sustained first- and second-degree burns on his ears, chest, stomach, back, hands, feet, arms, and legs. He sued the Clinic and asserted claims for negligence, gross negligence, assault, and violations of the Texas Deceptive Trade Practices Act. He alleged that the laser technician arbitrarily increased the laser's settings and caused his injuries. The Clinic moved to dismiss Ayub's claims arguing that Ayub had alleged health care liability claims under Chapter 74 of the Texas Civil Practice and Remedies Code but had not served an expert report within 120 days of filing the claims. See TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (West 2011) (requiring court to dismiss claims if expert report not timely served). Ayub argued that his claims were not health care liability claims and, as a result, he was not required to serve an expert report. The trial court denied the motion to dismiss and the Clinic filed this interlocutory appeal.

We review de novo the issue whether a claim is a health care liability claim under Chapter 74. *Bioderm Skin Care, LLC v. Sok*, 345 S.W.3d 189, 190–91 (Tex.App.-Dallas 2011, pet. filed). The legislature has defined a health care liability claim as

a cause of action (1) against a health care provider or physician (2) for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, (3) which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (West Supp.2011).

Ayub argues that our opinion in *Bioderm Skin Care, LLC v. Sok* is controlling and requires us to conclude that his claims are not health care liability claims. The Clinic distinguishes *Bioderm* and argues that it does not control our decision. We agree with Ayub.

In the *Bioderm* case, Sandee Sok sued Bioderm, a laser hair removal facility, and Dr. Quan Nguyen, a licensed physician and Bioderm's owner, for damages arising from burns she sustained during a laser hair removal procedure at Bioderm. *Id.* at 190. Sok alleged that she suffered second-degree burns caused by the operator's improper use of the laser. *Id.* Bioderm and Dr. Nguyen filed a motion to dismiss in which they contended that Sok's claims were health care liability claims as that term is defined in Chapter 74 and that Sok did not serve an expert report within 120 days of filing the claims. *Id.* Sok contended that her claims were simple negligence claims that did not fall within the ambit of Chapter 74. *Id.* We examined the underlying nature of the claims to determine their classification. *Id.* at 191. Our analysis was limited to the second element of the definition of health care liability claim. *Id.* Under the second element, a claim is a health care liability claim if it is for treatment, lack of treatment, or other departure from accepted standards of medical care, health care, or safety, professional, or administrative services directly related to health care. Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13).

■ We concluded in *Bioderm* that the facts did not support or suggest that the laser hair removal process fell under safety, professional, or administrative services directly related to health care. *Bioderm*, 345 S.W.3d at 191. We then considered whether the laser hair removal process qualified as "medical care" and concluded it did not because the procedure was not performed by someone licensed to practice medicine in the State of Texas. *Id.* Next, we considered whether the laser hair removal process fell within the definition of "health care." *Id.* The evidence showed that Bioderm did not treat Sok for a medical condition (Bioderm conceded this fact),

Sok was not referred to Bioderm by a medical provider, no medication was prescribed in connection with the hair removal procedure, and Dr. Nguyen did not even meet Sok until a week after her injury when he treated the burn on her leg. *Id.* We recognized that the evidence showed some involvement by Dr. Nguyen with the training and procedures for Bioderm. For example, Dr. Nguyen trained each laser operator each day and determined the laser settings for each laser procedure. *Id.* at 191–92. And the evidence showed that Bioderm took Sok's medical history and kept medical records. *Id.* But we also explained that Chapter 74 is not invoked merely because a physician is involved in the act or conduct in some fashion. *Id.* at 192. Instead, we stated that the statute requires the act or conduct to be performed "for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* (quoting Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(10)). We stated that the evidence showed Sok was never confined and the only condition for which Sok was seeing Bioderm was for unwanted hair. *Id.* at 192. And we concluded that the laser procedures were not directed at any disease, disorder, or injury, and, as a result, did not fall within the definition of "treatment" under Chapter 74. *Id.* Consequently, we concluded that Sok's claims were not health care liability claims. *Id.*

■ In this case, the Clinic argues that the facts here are different from those in *Bioderm* because Ayub's petition consistently referred to the "treatment" he received at the Clinic; Dr. Long was more involved in determining the laser settings than the doctor in *Bioderm;* Ayub received "treatment" for excessive body hair, which is a medical disease, disorder, or deformity; the laser hair removal procedure "addressed Ayub's self-perceived de-

formity" and constituted "treatment" for a mental disease, disorder, or deformity; and the Clinic always considered itself to be providing "treatment" to Ayub.

We disagree that the facts in this case are distinguishable from those in *Bioderm.* In both cases, the complainant sought laser removal of unwanted body hair and went to a laser hair removal facility for services; the complainant was not referred to the facility by a medical provider; the complainant was not prescribed medications in connection with the hair removal; the complainant completed a medical history; the facility kept medical records; the physician/owner of the facility trained the laser technician; the physician determined and met with the laser technician about the settings for each person; a laser technician performed the hair removal procedure; the laser technician was not a licensed physician; and the physician/own-er did not meet with the complainant until after the complainant sustained burns from the laser procedure. We conclude that any differences in the facts of this case and those in *Bioderm* are insignificant with respect to our classification of the claims. Based on the record before us, we conclude that the laser hair removal procedures in this case are indistinguishable from those in *Bioderm. See id.* at 192. As a result, we conclude that Ayub's claims are not health care liability claims.

We affirm the trial court's order denying appellant's motion to dismiss.