# IN THE SUPREME COURT OF TEXAS

No. 11-0773

BIODERM SKIN CARE, LLC AND QUAN NGUYEN, M.D., PETITIONERS,

v.

VEASNA "SANDEE" SOK, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

**Argued September 9, 2013**

JUSTICE GUZMAN delivered the opinion of the Court.

This Court has addressed the scope of the Texas Medical Liability Act on a number of occasions since its enactment in 2003. The Act requires claimants asserting health care liability claims to substantiate their claims with an expert report. Today, we determine whether claims arising out of allegedly improper laser hair removal constitute health care liability claims, and thus fall within the purview of the Act.

We recently established a rebuttable presumption that claims against physicians or health care providers based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement are health care liability claims.[1] Here, the claimant alleges that too high

---

[1] *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012).

an intensity setting caused burns and scars on her legs during the course of her laser hair removal treatment. We conclude the health care liability claim presumption applies in this case.

Further, we hold the claimant has failed to rebut this presumption because expert health care testimony is necessary to prove or refute her claim. Two primary factors guide our conclusion that such testimony is required. First, under federal regulations, the laser used by the defendants in this case may only be purchased by a licensed medical practitioner for supervised use in her medical practice.[2] Testimony concerning whether its operation departed from accepted standards of health care must therefore come from a licensed physician. Second, we have long held that the use of a "medical instrument which requires extensive training and experience for proper use" is not a matter plainly within the common knowledge of laymen.[3] Here, the defendant physician trained laser operators for at least six months on the variables associated with patients and equipment. Moreover, he determined the laser's intensity setting for the specific treatment at issue in this appeal. Accordingly, expert health care testimony is needed to prove or refute the claim.

Because the claimant has not rebutted the presumption that her claim is a health care liability claim, her failure to serve an expert report precludes her suit against a physician and a health care provider. Because the trial court denied the defendants' motion to dismiss and the court of appeals affirmed, we therefore reverse the court of appeals' judgment and remand for the trial court to dismiss the claim.

---

[2] *See* 21 C.F.R. §§ 801.109(a)(2), 878.4810(b)(1).

[3] *Haddock v. Arnspiger*, 793 S.W.2d 948, 954 (Tex. 1990).

2

## I. Background

In October 2006, Veasna "Sandee" Sok purchased seven laser hair removal treatments from Bioderm Skin Care, LLC (Bioderm). At the beginning of her fifth treatment, administered in July 2007, Sok expressed dissatisfaction with the results of her previous treatments to the laser operator. The operator relayed Sok's concerns to Dr. Quan Nguyen, who—after reviewing Sok's medical file—instructed the operator to increase the laser's intensity by one setting (from level five to level six) for Sok's fifth treatment. That treatment allegedly burned and scarred Sok's legs, the severity of which the parties dispute.[4] Sok met with Dr. Nguyen shortly after the burns occurred, and he prescribed a topical burn cream to treat the area. Dr. Nguyen instructed Sok to return for reevaluation in one week, but she did not return.

In July 2009, Sok sued Bioderm, claiming it was vicariously liable for the laser operator's negligence, and Dr. Nguyen, claiming he was liable for Bioderm's negligence because Bioderm was his agent. In their answer, Bioderm and Dr. Nguyen responded that Sok's claim was a health care liability claim under section 74.001(a)(13) of the Texas Medical Liability Act. Thus, when Sok did not serve an expert report within 120 days of filing her original petition, Bioderm and Dr. Nguyen moved to dismiss Sok's claim. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a). The trial court denied the motion to dismiss, and Bioderm and Dr. Nguyen filed an interlocutory appeal. The court

---

[4] Sok's original petition alleged she suffered third-degree burns, while her second amended petition alleged her burns were second degree. Dr. Nguyen's affidavit, submitted with Bioderm and Dr. Nguyen's motion to dismiss, stated he observed first-degree burns on Sok's legs.

of appeals affirmed the trial court's denial after determining that laser hair removal did not constitute "treatment."[5]  We granted Bioderm and Dr. Nguyen's petition for review.

## II. Jurisdiction

As an initial matter, we must determine whether we have jurisdiction over this interlocutory appeal.  Interlocutory orders denying all or part of the relief sought in a motion to dismiss pursuant to the Medical Liability Act are appealable. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9).  We may consider an interlocutory appeal when the court of appeals' decision conflicts with a previous decision of another court of appeals or this Court on an issue of law material to the disposition of the case. TEX. GOV'T CODE §§ 22.001(a)(2), (e); *id*. § 22.225(c).  To date, three courts of appeals have concluded claims arising from laser hair removal treatment are not health care liability claims;[6] three others have concluded they are health care liability claims.[7]  Because the court of appeals' opinion conflicts with three prior court of appeals' opinions on an issue of law material to the disposition of this appeal, we have jurisdiction over this interlocutory appeal. *See* TEX. GOV'T CODE §§ 22.001(a)(2), (e); *id*. § 22.225(c).

---

[5] 345 S.W.3d 189, 192.  The court of appeals relied primarily on a definition of treatment found in a medical dictionary selected by that court as "the care and management of a patient to combat, ameliorate, or prevent a disease, disorder, or injury." *Id*. (quoting MOSBY'S MEDICAL DICTIONARY 1880 (8th ed. 2009)).

[6] *See Cosmetic Procedures Clinic of N. Dallas v. Ayub*, 369 S.W.3d 928, 931 (Tex. App.—Dallas 2012, pet. dism'd by agr.); 345 S.W.3d at 192; *Ghazali v. Brown*, 307 S.W.3d 499, 505 (Tex. App.—Fort Worth 2010, pet. dism'd); *Tesoro v. Alvarez*, 281 S.W.3d 654, 666 (Tex. App.—Corpus Christi 2009, no pet.).

[7] *See Stanford v. Cannon*, No. 06–11–00011–CV, 2011 WL 2518856, at *8 (Tex. App.—Texarkana June 8, 2011, no pet.) (mem. op.)*; Kanase v. Dodson*, 303 S.W.3d 846, 850 (Tex. App.—Amarillo 2009, no pet.); *Sarwal v. Hill*, No. 14–01–01112–CV, 2002 WL 31769295, at *3 (Tex. App.—Houston [14th Dist.] Dec. 12, 2002, no pet.) (mem. op.). All three of these opinions issued before the instant opinion.

## III. Discussion

Whether Sok's claim is a health care liability claim is a question of law we review de novo. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). When construing a statute, we give it the effect the Legislature intended. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). The best expression of the Legislature's intent is the plain meaning of the statute's text. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). More particularly, the broad language of the Medical Liability Act evinces legislative intent for the statute to have expansive application. *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). In determining whether Sok's claim is a health care liability claim, we focus on the underlying nature of the cause of action and are not bound by the pleadings. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 847 (Tex. 2005).

The Medical Liability Act defines a health care liability claim as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). In *Texas West Oaks*, we observed that this statutory definition contains three elements:

> (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.

5

371 S.W.3d at 179–80. No one element, occurring independent of the other two, will recast a claim into a health care liability claim.

The parties here do not contest causation. Rather, their disputes center around two primary questions: whether Bioderm is a physician or health care provider and whether Sok's claim is for medical care or health care. To answer these questions, we first reiterate our recent holding that the Medical Liability Act "creates a rebuttable presumption that a patient's claims against a physician or health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement" are health care liability claims. *Loaisiga*, 379 S.W.3d at 252. As explained below, we conclude Dr. Nguyen is a physician and Bioderm, as an affiliate of a physician, is a health care provider. We further hold the rebuttable health care liability claim presumption applies and Sok has not rebutted that presumption.

## A. Physician or Health Care Provider

Dr. Nguyen and Bioderm must be physicians or health care providers for the rebuttable presumption to apply. *Id.*; *Tex. W. Oaks*, 371 S.W.3d at 179–80. No party disputes that Dr. Nguyen is a physician as defined by the Medical Liability Act. Rather, the crux of the parties' disagreement on this question is whether Bioderm qualifies as a health care provider. Because Bioderm is an affiliate of a physician, we conclude it is a health care provider under the Medical Liability Act.

The Medical Liability Act defines a health care provider to include, *inter alia*, an affiliate of a physician. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(12)(B)(i). The statute defines "affiliate" as "a person who, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with a specified person, including any direct or indirect

6

parent or subsidiary." *Id.* § 74.001(a)(1). And the statute defines control as "the possession of the power to direct the management and policies of the person" through ownership. *Id.* § 74.001(a)(3). Therefore, if we determine Dr. Nguyen directly or indirectly controls Bioderm, then we must conclude Bioderm is Dr. Nguyen's affiliate and is a health care provider under the Act. *Id.* §§ 74.001(a)(1), (a)(12)(B)(i).

The record establishes that Dr. Nguyen is the sole owner of Bioderm and possesses the power to direct its management and policies. A physician's assistant originally formed Bioderm as a limited liability company in 2005. Dr. Nguyen acquired total ownership of Bioderm in 2006, becoming its sole member. Moreover, Dr. Nguyen is responsible for the clinic's operations and supervises patient evaluations, diagnoses, and treatments. In addition, Dr. Nguyen implemented training procedures for new employees, including attendance at a medical lecture, an observation period, clinical practice, morning rounds, and a written examination. Thus, because Dr. Nguyen is the sole owner of Bioderm and "possess[es] the power to direct the management and policies" of Bioderm, we conclude Bioderm is an affiliate of a physician and is a healthcare provider under the Medical Liability Act.[8] *Id.* § 74.001(a)(3).

### B. Rebuttable Presumption

Having determined that Dr. Nguyen is a physician and Bioderm is a health care provider, we next examine whether Sok's claim is based on facts implicating either Dr. Nguyen or Bioderm's conduct during her care, treatment, or confinement. If it is, then we apply the rebuttable

---

[8] The parties also dispute whether Bioderm is a physician and whether it is also a health care provider as an agent of a physician. Because we conclude Bioderm is a health care provider as an affiliate of a physician, we need not reach these issues.

7

presumption that the claim is a health care liability claim. *See Loaisiga*, 379 S.W.3d at 252. Sok alleges her injury was caused by the care or treatment for laser hair removal she obtained from Bioderm. Her medical records indicate Sok was Dr. Nguyen's patient, as she signed a "consent to treatment" form, agreeing to "grant permission to the Medical Professional and their assistants, to perform such medical treatment(s) during my visit as are prescribed by my Medical Professional."[9] Because Sok asserts she was injured while receiving care or treatment from a health care provider, the rebuttable presumption that Sok's claim is a health care liability claim must apply. *Id.*

### C. Claimed Departure from Accepted Standards of Health Care

We next determine whether Sok has rebutted the presumption. If she has not, her claim must be dismissed for failure to serve an expert report as required by the Medical Liability Act. We have already determined Sok's claim satisfies the first element of a health care liability claim because Dr. Nguyen is a physician and Bioderm is a health care provider. And the parties agree that the third element of a health care liability claim (causation of the injury) is met. Thus, Sok may only rebut the presumption that her claim is a health care liability claim by proving her claim does not constitute an alleged "departure[] from accepted standards of medical care or health care."[10] TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13); *Tex. W. Oaks*, 371 S.W.3d at 179–80. As explained

---

[9] Sok asserts she was not a patient of Dr. Nguyen because she did not meet with him until he examined her burns after the fifth treatment. But as we have previously explained, "[t]he fact that a physician does not deal directly with a patient does not necessarily preclude the existence of a physician-patient relationship." *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex. 1995).

[10] Though the statute also includes treatment, lack of treatment, safety, professional services, or administrative services directly related to health care as other forms of health care liability claims, TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13), neither party asserts that these provisions control in this case.

below, Sok has not rebutted this presumption because expert health care testimony is needed to prove or refute the merits of her claim.

The Medical Liability Act defines health care as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10). In *Texas West Oaks*, we considered whether a claim alleged a departure from accepted standards of health care and held that "if expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider, the claim is a health care liability claim." 371 S.W.3d at 182. Accordingly, in considering whether a claim alleges a departure from accepted standards of medical or health care, a court should first determine whether expert medical or health care testimony is needed to establish the requisite standard of care and breach.[11]  *See id.*  And only if expert testimony is not needed should a court proceed to consider the totality of the circumstances, as a claim may still be a health care liability claim despite that "in the final analysis, expert testimony may not be necessary to support a verdict." *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005).[12] Therefore, we address whether expert health care testimony is needed to prove or refute the merits of Sok's claim.

---

[11] Treatment and a physician-patient relationship are also elements of a claimed departure from accepted standards of health care. *Id*. § 74.001(a)(10); *Tex. W. Oaks*, 371 S.W.3d at 180. But in assessing the application of the rebuttable presumption, we have already determined Sok was a patient receiving treatment. *See supra* Part II.B.

[12] *See also Tex. W. Oaks*, 371 S.W.3d at 182; *Haddock*, 793 S.W.2d at 951 (recognizing that when the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, no expert testimony may be required).

9

Two of our precedents—*Texas West Oaks* and *Haddock v. Arnspiger*[13]—offer guidance on when expert health care testimony is needed to prove a claim such as Sok's. In *Texas West Oaks*, Williams—a mental health hospital employee—brought a negligence claim against his employer for injuries sustained in an altercation with a patient. 371 S.W.3d at 175–76. Williams sued the hospital, alleging negligence in training, supervising, failing to warn, and inadequately equipping employees to address such a circumstance. *Id*. at 182. But the crux of the allegation concerned the appropriate standards of care owed to employees, including the services, protocols, supervision, monitoring, and equipment necessary to satisfy that standard, and whether such specialized standards were breached. *Id*. Because the underlying basis of the claim concerned the appropriate standards of care owed to employees of a mental health hospital and whether those standards were breached, we held the plaintiff could not establish those elements without expert testimony in the health care field. *Id*. at 182–83. Simply stated, "[i]t would blink reality to conclude that no professional . . . health judgment is required to decide what [the required protocols and standards] should be, and whether they were in place at the time of Williams' injury." *Id*. at 182.

Moreover, our opinion in *Haddock* illuminates the question concerning the necessity of expert medical or health care testimony when the claim, as here, involves the use of a medical device. In *Haddock*, the patient sued his physician for negligence when the physician perforated the patient's colon during a routine proctological examination. 793 S.W.2d at 949, 951. The examination involved the use of a flexible colonoscope, which the record established was a medical device requiring extensive training and experience for proper use. *Id*. at 954. We concluded that

---

[13] 793 S.W.2d at 951.

expert testimony was required because "[o]bviously, the use of a flexible colonoscope for a proctological examination is not a matter plainly within the common knowledge of laymen." *Id.; see also Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex. 1993) ("[U]nless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, the patient must tender expert testimony" to prove the claim.).

Guided by these precedents, we conclude expert health care testimony is needed to prove or refute Sok's claim for two primary reasons. First, federal regulations provide the laser used in this case may only be acquired by a licensed medical professional for supervised use in her medical practice. We note the Legislature began regulating laser hair removal facilities and technicians in 2009. Under the 2009 statute, laser hair removal constitutes the practice of medicine under the Texas Health and Safety Code.[14] *See* TEX. HEALTH & SAFETY CODE § 401.521. But because Sok filed suit before this state law took effect, it is inapplicable to her claim.[15] Importantly, however, even before the enactment of this state regulation, the United States Food and Drug Administration classified Bioderm's pulsed dye laser as a Class II surgical device. 21 C.F.R. § 878.4810(b)(1) (categorizing carbon dioxide lasers intended to cut, destroy, or remove tissue as Class II surgical devices). Federal regulations restrict Class II surgical devices as being "not safe except under the supervision of a practitioner licensed by law to direct the use of such device, and . . . [are] to be sold

---

[14] Pursuant to the 2009 legislation, laser hair removal may only be performed by a physician, a person acting under a physician's order, or a person otherwise authorized by law to practice medicine. TEX. HEALTH & SAFETY CODE § 401.521. Additionally, every laser hair removal facility must have a written contract with a consulting physician to: (1) establish proper protocols for the services provided at the facility; (2) audit the facility's protocols and operations; and (3) be available for emergency consultation and appointments. *Id*. § 401.519.

[15] The Legislation was enacted in May 2009, before Sok filed this suit. Act of May 23, 2009, 81st Leg., R.S., ch. 303, § 1, secs. 401.501–.522, 2009 Tex. Gen. Laws 822, 822–25.

only to or on the prescription or other order of such practitioner for use in the course of his professional practice."[16] *Id*. § 801.109(a)(2).[17] Sok's live pleading asserted the laser device in this dispute is "controlled and restricted to those holding a qualified license, such as the medical license held by Defendant Nguyen . . . ." Because Bioderm's laser is a regulated surgical device, which may only be acquired by a licensed medical practitioner for supervised use in her medical practice, we conclude the testimony of a licensed medical practitioner is required to prove or refute Sok's claim that use of the device departed from accepted standards of health care.

Second, the proper operation and use of this regulated surgical device requires extensive training and experience, which indicates that such matters are not within the common knowledge of laypersons. As we have observed here, Dr. Nguyen established and maintained a six-month training program to instruct laser operators how to properly perform treatments by taking into account the variables associated with patients (such as skin type) and equipment (such as intensity settings and attachments). This training requires attendance at a medical lecture, an observation period, clinical practice, morning rounds, and a written examination. When operators begin administering treatments, Dr. Nguyen reviews each scheduled procedure. His rounds include a discussion of previous treatment settings, complications or tolerance of previous treatments, and the planned treatment details to be executed that day. And Dr. Nguyen makes the final decision regarding the intensity settings of the laser. Bioderm's policy requires all operators, even those with

---

[16] The provision indicates that practitioners are individuals "such as physicians, dentists, and veterinarians, licensed by law to use or order the use of such device." 21 C.F.R. § 801.109(a)(1)(ii).

[17] *See* 21 C.F.R. § 860.3(c) (providing Class II devices are subject to special controls).

12

previous experience, to undergo and satisfactorily complete Dr. Nguyen's training. Dr. Nguyen trained the operator who performed Sok's treatment. And significantly, Dr. Nguyen determined the specific laser intensity setting for each of her treatments, including the one Sok alleges caused her burns and scarring.

This extensive training compels the conclusion that expert health care testimony is needed to prove or refute Sok's claim concerning the improper use of the device. Sok suffered no burns or scarring in four previous treatments to the leg area at an intensity identified as "level five." Laypersons cannot be expected to understand whether Dr. Nguyen should have known that use of the device on the same area would cause burns in a single treatment at the higher intensity of "level six." We therefore hold expert health care testimony is required to prove or refute Sok's claim, and Sok has not rebutted the presumption that her claim is a health care liability claim. *See Loaisiga*, 379 S.W.3d at 252; *Tex. W. Oaks*, 371 S.W.3d at 182–83; *Haddock*, 793 S.W.2d at 954.

Sok argues that any required expert testimony could be elicited from a technician trained in the use of laser hair removal devices, thus rendering expert testimony from a physician unnecessary. As an initial matter, we note expert testimony does not necessarily have to be proffered by a licensed physician to constitute expert health care testimony. *See* TEX. CIV. PRAC. & REM. CODE § 74.402 (requiring an expert to be practicing health care in the same field as the defendant). But, we disagree with Sok's contention that the testimony of a trained laser technician would suffice on these particular facts. Allowing a technician who could not legally acquire or supervise use of the device to testify that a physician's use of the device violated accepted standards of health care is not a procedure the Medical Liability Act allows. *See id.* (expert must be licensed in the area of health

13

care related to the claim, practice in the same field as the defendant, and have knowledge of accepted standards of care). Because expert health care testimony is needed to prove or refute Sok's claim against a physician and a health care provider, her claim is a health care liability claim.

### III. Conclusion

In sum, we conclude the rebuttable presumption we established in *Loaisiga*—that the claim is a health care liability claim—applies here. Further, expert health care testimony is needed to prove or refute Sok's claim that Bioderm and Dr. Nguyen breached the appropriate standard of care, and therefore Sok has not rebutted the presumption. Because Sok filed a health care liability claim but failed to serve an expert report as required by the Medical Liability Act, we conclude the court of appeals erred in affirming the trial court's denial of the motion to dismiss. Additionally, Bioderm and Dr. Nguyen requested attorney's fees and costs in the trial court pursuant to section 74.351(b)(1) of the Medical Liability Act. Accordingly, we remand to that court to dismiss Sok's claim against Bioderm and Dr. Nguyen and consider their request for attorney's fees and costs.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** March 28, 2014

14