**REVERSE and REMAND; and Opinion Filed June 5, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01065-CV

### MATTHEW D. BARROWS, M.D., P.A. D/B/A DERMATOLOGY & SKIN CANCER SURGERY CENTER AND MELISSA MCANALLY, Appellants
### V.
### SUZETTE CARNES, Appellee

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-09350-F**

## OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Lewis

This is an interlocutory appeal from orders denying motions to dismiss filed by appellants Matthew D. Barrows, M.D., P.A. d/b/a Dermatology & Skin Cancer Surgery Center (Barrows) and Melissa McAnally (McAnally). Appellee Suzette Carnes (Carnes) sued Barrows and McAnally seeking damages for injuries she sustained during an intense pulsed light (IPL) skin rejuvenation procedure. For the reasons that follow, we reverse and remand to the trial court for further proceedings.

### BACKGROUND

Carnes sought IPL skin rejuvenation treatments from the RejuveDermMD Aesthetic Center (Center), located within the Dermatology & Skin Cancer Surgery Center owned by Barrows. During her third IPL treatment performed by McAnally, the Center's aesthetician,

Carnes allegedly sustained injuries to her left eye, including a decrease in vision, inability to tolerate light, and pupil disfigurement. Carnes sued Barrows and McAnally, asserting claims for negligence, gross negligence, assault, and violations of the Texas Deceptive Trade Practices Act.

Barrows and McAnally asserted Carnes's claims were health care liability claims, subject to the Texas Medical Liability Act (TMLA), as codified in Chapter 74 of the Texas Civil Practice and Remedies Code. Although Carnes maintained that her claims were negligence claims that did not fall within the ambit of Chapter 74, she nevertheless served expert reports pursuant to section 74.351 of the TMLA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2013). Barrows and McAnally objected to Carnes's expert reports as failing to meet the requirements of Chapter 74 and they filed individual motions to dismiss Carnes's claims. The trial court conducted a hearing and denied Barrow's and McAnally's motions to dismiss. Barrows and McAnally filed this interlocutory appeal. *See id*. § 51.014(a)(9) (West Supp. 2013).

## DISCUSSION

On appeal, Barrows and McAnally present one issue with two sub-parts. They ask that we determine whether the trial court abused its discretion in denying their motions to dismiss pursuant to section 74.351 of the TMLA. Appellants ask that we first consider whether Carnes's claims are health care liability claims and second, whether Carnes complied with the expert report requirements of section 74.351.

Carnes argues that our opinion in *Bioderm Skin Care, LLC v. Sok*, 345 S.W.3d 189 (Tex App.—Dallas 2011, pet. granted) is controlling and requires that we conclude her claims are not health care liability claims. However, shortly after submission of this appeal, the Texas Supreme Court issued its opinion reversing the judgment in *Bioderm*. *See Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753 (Tex. 2014).

## A. HEALTH CARE LIABILITY CLAIM

Whether Carnes's claims are health care liability claims under Chapter 74 is a question of law we review de novo. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). The determination of whether a claim is a health care liability claim requires an examination of the underlying nature of the claim, rather than any characterization given to the claim by the pleadings. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005).

A health care liability claim consists of three elements: (1) the claim is asserted against a physician or health care provider, (2) for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care, (3) which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West Supp. 2013); *see Tex. W. Oaks Hosp.,* 371 S.W.3d at 179–80. Additionally, the TMLA "creates a rebuttable presumption that a patient's claims against a physician or health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement" are health care liability claims. *Loaisiga v. Cerda*, 379 S.W.3d 248, 252 (Tex. 2012).

With respect to the first element, the parties do not dispute that Barrows is a physician as defined in Chapter 74. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(23). Although Carnes discusses the lack of evidence in the record to show that McAnally held any medical licenses, had any medical training, or otherwise possessed any specialized knowledge, skill, or training in any field related to health care, Carnes does not dispute that McAnally is an employee of Barrows. Accordingly, we conclude McAnally is a "health care provider" as defined in Chapter 74. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(B).

With respect to the third element, Carnes alleges her injuries were caused by the IPL skin rejuvenation treatment she received from McAnally. For purposes of analyzing whether Carnes's claims are health care liability claims, we will assume the truth of her causation allegation. The third element is met.

Having determined that Barrows is a physician and McAnally is a health care provider, and having accepted as true Carnes's allegation concerning causation, we next consider the second element: whether Carnes's claims are based on facts implicating the conduct of Barrows and McAnally during Carnes's care, treatment, or confinement. *See Bioderm*, 426 S.W.3d at 759. In her pleading, Carnes claimed that Barrows breached a duty to ensure that McAnally used the laser in a safe, reasonable and prudent manner by (1) employing McAnally, who was unqualified to use the laser device, (2) allowing McAnally to perform the procedure without Carnes's consent, and (3) using the laser near and around Carnes's eye. Carnes alleged that Barrows, as McAnally's employer, was vicariously liable for McAnally's negligence. Carnes alleged McAnally ignored the risk of using a high-powered laser around Carnes's eye when she moved Carnes's safety glasses from their proper position and performed the IPL treatment directly over Carnes's exposed eye.

According to the record, Carnes received physician-supervised treatment in the physician's clinic. Prior to treatment, Carnes completed a "Patient History Questionnaire," which included medical history. Carnes's rheumatologist was consulted before the IPL procedure was performed. Carnes signed various forms, including a "Patient History Questionnaire," "Financial Policy," and "Cosmetic Interest Questionnaire," on lines designated for a patient's signature. McAnally's "Progress Notes" refer to Carnes as the patient. Medical records, consisting of progress notes and IPL treatment documentation, were generated in connection with the procedure. On this record, we conclude Carnes's claims are based on

–4–

conduct of Barrows, a physician, and McAnally, a health care provider, in the context of care and treatment, implicate medical expertise, and involve the alleged departure from accepted standards of health care. *See* TEX. CIV. PRAC. & REM. CODE ANN. §74.001(a)(13); *see also Rio Grande Valley Vein Clinic, P.A., d/b/a RGV Vein Laser & Aesthetic Clinic v. Guerrero*, No. 12-0843, 2014 WL 1661495, at *2 (Tex. April 25, 2014) (per curiam); *Bioderm*, 426 S.W.3d at 759. We further conclude Carnes has not rebutted the presumption that a patient's claims against a physician and health care provider based on facts implicating the defendants' conduct during the patient's care or treatment are health care liability claims. *See Loaisiga*, 379 S.W.3d at 252. Accordingly, the second element is met.

Our conclusion is consistent with a recent ruling of the Amarillo Court of Appeals, concluding the plaintiff's claims were health care liability claims in a factually similar case involving IPL treatment provided by a physician's employee. *See Kanase v. Dodson*, 303 S.W.3d 846 (Tex. App.—Amarillo 2009, no pet.). In *Kanase*, the plaintiff alleged Kanase's employees negligently performed IPL laser treatments, causing severe burns and permanent damage to her arms. *Id.* at 847. The plaintiff asserted claims of ordinary negligence against Kanase for, among other things, failing to properly train and supervise employees in the use of the IPL technology. *Id.* The Amarillo Court of Appeals held that "claims that a health care provider did not adequately staff, train, or supervise employees are integral components of the rendition of health care, which implicate medical expertise and the departure from accepted standards of health care, and are, therefore, health care liability claims. *Id.* at 849 (citing *Marks*, 319 S.W.3d at 661).

Our conclusion is supported by the fact expert medical or health care testimony would be necessary to prove or refute Carnes's claims. The TMLA defines health care as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health

care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. §74.001(a)(10). If expert medical or health care testimony is necessary to prove or refute accepted standards of medical or health care and their breach, the claim is a health care liability claim. *See Tex. W. Oaks*, 371 S.W.3d at 182. Here, Carnes argues expert medical or health care testimony is not required to prove the merits of her claims. However, the IPL skin rejuvenation treatment performed on Carnes utilized an intense pulsed light (IPL) device. We note that in her pleading, Carnes also referred to the IPL device as a laser. In *Bioderm*, the Texas Supreme Court considered the necessity of expert medical or health care testimony when the claim involved injuries caused during laser hair removal. 426 S.W.3d at 760. The Court looked to specific facts in the record and concluded that expert health care testimony was necessary to prove or refute Sok's claim for two reasons. *Id*. at 761. First, because Bioderm's laser was a regulated surgical device that could only be acquired by a licensed medical practitioner for supervised use in her medical practice, testimony of a licensed medical practitioner was required to prove or refute Sok's claim that use of the device departed from accepted standards of health care. *Id*. at 761–62. Second, because proper operation and use of the laser required extensive training and experience, expert testimony was necessary to prove or refute Sok's claim concerning improper use of the device. *Id.* at 762. The Supreme Court concluded that "because expert health care testimony is needed to prove or refute Sok's claim against a physician and a health care provider, her claim is a health care liability claim." *Id*.

Here, Carnes's claims derive from her allegation that McAnally improperly used the IPL device and that such action proximately resulted in Carnes's injuries. Her specific claims relate to an alleged failure by Barrows to adequately staff, train, or supervise McAnally in the use of the IPL device. Such claims are integral components of health care, which implicate medical

expertise and the departure from accepted standards of health care.  *See Marks*, 319 S.W.3d at 661; *Kanase*, 303 S.W.3d at 849.  On this record, Carnes's claims are health care liability claims. *See Bioderm*,  426 S.W.3d at 762.

## B.  EXPERT REPORTS

In the second sub-part of their sole issue, Barrows and McAnally ask that we consider whether Carnes complied with the expert report requirements of chapter 74.  Appellants contend that Carnes's expert reports do not constitute objective, good faith efforts to comply with the statutory requirements of section 74.351.  We note that Barrows and McAnally raised the sufficiency of Carnes's expert reports in their motions to dismiss.  However, based on our review of the record, we conclude the trial court did not consider or make any ruling with respect to the sufficiency of Carnes's expert reports.  The trial court should be given the opportunity to determine the sufficiency of the expert reports.

## CONCLUSION

In denying appellants' motions to dismiss, the trial court relied on our opinion in *Bioderm Skin Care, LLC v. Sok*, 345 S.W.3d 189 (Tex App.—Dallas 2011, pet. granted) to reach its conclusion that Carnes's claims were not health care liability claims.  The trial court did not have the benefit of the recent Texas Supreme Court's opinion reversing *Bioderm* and clarifying the factors to be considered in determining whether a claim constitutes a health care liability claim. See *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753 (Tex. 2014).

–7–

In light of the Supreme Court's decision in *Bioderm*, we reverse the trial court's orders denying

Barrows' and McAnally's motions to dismiss and remand to the trial court to determine whether

Carnes's expert reports satisfy the expert report requirements of chapter 74.


/David Lewis/
DAVID LEWIS
JUSTICE

131065F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MATTHEW D. BARROWS, M.D., P.A.
D/B/A DERMATOLOGY & SKIN
CANCER SURGERY CENTER AND
MELISSA MCANALLY, Appellants

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-09350-F.
Opinion delivered by Justice Lewis.
Justices Bridges and Fillmore participating.

No. 05-13-01065-CV        V.

SUZETTE CARNES, Appellee

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants MATTHEW D. BARROWS, M.D., P.A. D/B/A DERMATOLOGY & SKIN CANCER SURGERY CENTER AND MELISSA MCANALLY recover their costs of this appeal from appellee SUZETTE CARNES.

Judgment entered this 5th day of June, 2014.

/David Lewis/
DAVID LEWIS
JUSTICE