

# NUMBER 13-21-00172-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTUS SPOHN HEALTH
SYSTEM CORPORATION,                                              Appellant,

v.

MARY ANN HIGH AND
CYNTHIA RECTOR,                                                 Appellees.

## On appeal from the County Court at Law No. 1
## of Nueces County, Texas.

# OPINION

### Before Justices Hinojosa, Tijerina, and Silva
### Opinion by Justice Silva

In this interlocutory appeal, we review the trial court's denial of appellant Christus

Spohn Health System Corporation's (Christus Spohn) motion to dismiss appellees Mary

Ann High and Cynthia Rector's negligence and medical malpractice suit. At issue is

whether High and Rector's causes of action constitute health care liability claims subject to the expert-report requirement under the Texas Medical Liability Act (TMLA).[1] *See* Tex. Civ. Prac. & Rem. Code § 74.351.

For reasons explored below, we conclude in the affirmative; namely, High and Rector's complaints that Christus Spohn failed to properly identify each infant or parent of each infant or maintain proper patient identification practices—resulting in High and Rector being "switched at birth" and discharged to the wrong families—is a claimed departure of accepted standards of professional or administrative services directly related to health care. *See id.* at § 74.001(a)(13). We reverse and remand so that the trial court may assess the adequacy of High and Rector's submitted expert reports.

## I. BACKGROUND

On July 29, 2020, High and Rector sued Christus Spohn for negligence and alternatively, medical malpractice, complaining that the hospital's improper practices resulted in High and Rector being misidentified while in the hospital and discharged to the incorrect families on April 30, 1969.[2] High and Rector pleaded that the doctrine of res ipsa loquitur applied in the alternative.

---

[1] The parties agree that the trial court's denial of Christus Spohn's motion to dismiss was predicated on its conclusion that High and Rector's claims were not health care liability claims, and the trial court did not rule on the adequacy of the expert reports or High and Rector's contingency request for an extension of time to cure any deficiencies. *See* Tex. Civ. Prac. & Rem. Code § 74.351(c); *Baty v. Futrell*, 543 S.W.3d 689, 692 n.2 (Tex. 2018).

[2] High became motivated to learn the circumstances of her birth after her DNA testing results from an online DNA testing service indicated she had ancestry unshared by other members of her immediate family. High obtained public birth records from the Kleberg County Hospital, where High was delivered, and confirmed that one other female, Rector, had also been born on the same day. High contacted Rector, but she declined to participate in genetic testing. However, Rector's sister agreed to undergo genetic testing, and the results revealed that High and Rector's sister were biologically related.

Following Christus Spohn's answer, High and Rector served Christus Spohn with expert reports.[3] On January 19, 2021, Christus Spohn filed objections to the expert reports and a motion to dismiss for failure to file an expert report pursuant to the TMLA. *See id.* Christus Spohn argued that the expert reports were so deficient that they amounted to no report being served at all. *See id.* § 74.351(*l*), (r). In response, High and Rector asserted that they had submitted the expert reports out of an abundance of caution and maintained that their claims do not involve medical care, treatment, or a claimed departure from the accepted standards of health care, safety, or professional or administrative services directly related to health care so as to require TMLA compliance. *See id.* at §§ 74.001(a)(13) (defining a "health care liability claim"), 74.351 (requiring an expert report to accompany a health care liability claim). At a hearing on Christus Spohn's motion to dismiss, High and Rector reiterated their position that the TMLA does not apply, and the trial court subsequently denied Christus Spohn's motion to dismiss on this narrow basis. This appeal followed.

## II.    DISCUSSION

By a single issue, Christus Spohn challenges the trial court's denial of its TMLA motion to dismiss. The question of whether a hospital's misidentification of infant patients constitutes a health care liability claim is an issue of first impression for Texas courts.

---

[3] The expert reports are not contained in the record on appeal, but the parties do not dispute that the reports were served on January 6, 2021. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (requiring dismissal with prejudice and attorney's fees award if claimant fails to serve an expert report within 120 days after a defendant files an original answer).

3

**A.     Standard of Review and Applicable Law**

"The [TMLA]'s comprehensive statutory framework strikes 'a careful balance between eradicating frivolous claims and preserving meritorious ones'" in its imposition of a threshold expert report requirement, which necessitates that "suits asserting health care liability claims must be supported by an expert report 'before litigation gets underway.'" *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 362–63 (Tex. 2019) (quoting *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008) and *Spectrum Healthcare Res., Inc. v. McDaniel*, 306 S.W.3d 249, 253 (Tex. 2010)). A claimant's failure to serve an adequate expert report in a suit asserting a health care liability claim will result in the dismissal of the claimant's suit with prejudice. *Id*. at 363; *see* TEX. CIV. PRAC. & REM. CODE § 74.351(*l*), (r)(6).

The TMLA defines a "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Imbued in this definition are three elements:

> (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.

*Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 758 (Tex. 2014) (quoting *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179–80 (Tex. 2012)). "No one element, occurring independent of the other two, will recast a claim into a health care liability claim." *Id.*

Under the TMLA, "health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10); *see also id.* § 74.001(a)(19) (defining "medical care"). Though the statute does not define "patient," we apply its common meaning. *See id.* § 74.001; *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015). The primary dictionary definition of "patient" is "an individual awaiting or under medical care and treatment." *Patient (noun)*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/patient (last visited November 15, 2022); *see generally HCA, Inc. v. Miller ex rel. Miller*, 36 S.W.3d 187, 195 n.21 (Tex. App.—Houston [14th Dist.] 2000), *aff'd*, 118 S.W.3d 758 (Tex. 2003) ("Provided it is subsequently born alive, even an unborn fetus is a 'patient' to whom a doctor treating the mother owes a duty of care." (citing *Brown v. Shwarts*, 968 S.W.2d 331, 334 (Tex. 1998))). "Safety" is likewise not defined by the TMLA. However, the Texas Supreme Court has stated that "safety" shoulders its common meaning: "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'" *Ross*, 462 S.W.3d at 501 (quoting *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005)). "Professional or administrative services" means "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license,

5

accreditation status, or certification to participate in state or federal health care programs." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(24).

Notably, as to a claim based on professional or administrative services, the TMLA does not require that "the alleged injury must have occurred during or contemporaneously with health care [received], nor that the alleged injury was caused by health care." *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 535 (Tex. 2016); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *CHCA Bayshore, L.P. v. Ramos*, 388 S.W.3d 741, 746 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("[I]t is not necessary that the professional or administrative services occur during the patient's medical care, treatment, or confinement."); *see also Ross*, 462 S.W.3d at 504 (providing that there need only be "a substantive nexus between the safety standards allegedly violated and the provision of health care"). Rather, the TMLA applies where a claim concerns injury "proximately caused by a 'departure from accepted standards of . . . professional or administrative services *directly related to* health care.'" *Carswell*, 505 S.W.3d at 535 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13)). The TMLA's "broad language . . . evidences [a] legislative intent for the statute to have expansive application" and "essentially creates a presumption that a claim is a[] [health care liability claim] if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). A claimant may rebut the presumption by showing that "the only possible relationship between the conduct underlying a claim and the rendition of medical services or health[]care [is] the

6

health[]care setting[,] . . . the defendant's status as a doctor or health care provider, or both." *Id.*

Whether a claim is a health care liability claim is a question of law we review de novo. *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 836 (Tex. 2022). In our analysis, we must consider the "entire court record" and "the facts underlying the claim, not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts or legal theories asserted." *Id.* at 838–39 (quoting *Loaisiga*, 379 S.W.3d at 255).

## B.    Analysis

High and Rector do not dispute that Christus Spohn has established the first element—that Christus Spohn is a "health care provider" under the TMLA; therefore, the first element is met. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A) ("'Health care provider' means any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care[.]"); *see also Soliz v. McAllen Hosps., L.P.*, No. 13-20-00535-CV, 2022 WL 52595, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 6, 2022, pet. denied) (mem. op.) ("It is undisputed that the Hospital is a health care provider under the TMLA, and, therefore, the first [health care liability claim] element is met.").

As we proceed with our inquiry into the second element, we find the Texas Supreme Court's statutory analysis in *Carswell* to be most instructive. *See* 505 S.W.3d at 536. In *Carswell*, the court considered whether a claim based on post-mortem conduct concerned "professional or administrative services *directly related* to health care." *Id.* at 535. Observing that the plaintiff's factual allegations implicated provisions under the Texas Code of Criminal Procedure, Texas Health and Safety Code, and Texas

7

Administrative Code pertaining to hospital requirements for licensure, the court concluded that the suit implicitly involved a "claimed departure from accepted standards of . . . professional or administrative services." *Id.* at 534–35 (citing TEX. CODE CRIM. PROC. ANN. arts. 49.25, 49.32(a), 49.35; TEX. HEALTH & SAFETY CODE ANN. § 241.053(a)(3); 25 TEX. ADMIN. CODE §§ 133.1(c), 133.121(1)(F)); *see also McAllen Hosps., L.P. v. Ontiveros*, No. 13-11-00512-CV, 2012 WL 3761981, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 30, 2012, pet. denied) (mem. op.). We frame our analysis similarly and jointly consider: (1) what is the gravamen of High and Rector's claims; and (2) what, if any, relationship exists between High and Rector's claims and the professional or administrative services Christus Spohn was obligated to provide as a condition of maintaining its license, accreditation status, or certification. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *Carswell*, 505 S.W.3d at 536; *Bioderm Skin*, 426 S.W.3d at 758.

Christus Spohn argues that High and Rector's claims are premised on allegations of the hospital's noncompliance with practices set forth in Chapter 133 of the Texas Administrative Code, which "provides procedures for obtaining a hospital license; minimum standards for hospital functions and services; [and] patient rights standards . . . ." *See* 25 TEX. ADMIN. CODE § 133.1(b); *see id.* § 133.1(a) ("The purpose of [Chapter 133] is to implement the Health and Safety Code, Chapter 241, which requires general and special hospitals to be licensed by the Department of State Health Services."); *see also* TEX. HEALTH & SAFETY CODE ANN. § 241.002 (purpose). Christus Spohn directs this Court to the following Chapter 133 provisions:

> The hospital shall have a medical record service that has administrative responsibility for medical records. A medical record shall be maintained for every individual who presents to the hospital for evaluation or treatment.
>
> . . . .
>
> The medical record shall contain information to justify admission and continued hospitalization, support the diagnosis, reflect significant changes in the patient's condition, and describe the patient's progress and response to medications and services. Medical records shall be accurately written, promptly completed, properly filed and retained, and accessible.

25 TEX. ADMIN. CODE § 133.41(j). The Texas Department of State Health Services "may deny, suspend, or revoke a license [of a hospital] or impose an administrative penalty if the licensee or applicant . . . fails to comply" with "any provision" set forth in Chapter 133. *Id.* at § 133.121(1). Christus Spohn further asserts that Chapter 133's medical record provisions encompass the professional or administrative duties central to High and Rector's claims—namely, that hospitals must "[p]roperly identify[] infants within medical records and hav[e] appropriate 'processes and procedures in place' to prevent infant misidentification . . . as a condition for maintaining its license."

In response, High and Rector maintain on appeal, as they did before the trial court, that they have presented "no allegation that proper medical records were not kept on the mothers . . . or the infants." High and Rector stress that this case "does not involve incorrect medical records" because "[t]he only documents alleged to be incorrect here were the birth certificates," which are "not a part of health care." Thus, High and Rector contend that Chapter 133 requirements regarding medical records should have no bearing on our analysis. Having reviewed the facts underlying High and Rector's claims, we disagree. *See Lake Jackson*, 640 S.W.3d at 838–39.

9

The crux of High and Rector's claims concern Christus Spohn's alleged failure to have reasonable processes and procedures in place to correctly identify and maintain the identity of each infant patient so as to minimize risk of patient misidentification or incorrect discharge. *See id*. Although not controlling, we note the language contained in High and Rector's original petition:

> 5.2 At the time and place in question, Defendant had a duty to correctly and securely identify each infant in the hospital and to ensure that discharge of each infant be with his or her parent or family.
>
> 5.3 Defendant was guilty of the following separate acts of negligence, each of which, singularly or in combination, were a proximate cause of the injuries and damages alleged herein.
>
> > a) Failing to have reasonable processes and procedures in place to properly identify each infant, or failing to follow same;
> >
> > b) Failing to have reasonable processes and procedures in place to properly identify the parent for each infant, or failing to follow same;
> >
> > c) Failing to have reasonable processes and procedures in place to maintain the identity of each infant while in the hospital, or failing to follow same;
> >
> > d) Failing to have reasonable processes and procedures in place to minimize or eliminate the risk that an infant would be misidentified, or failing to follow same;
> >
> > e) Failing to have reasonable processes and security procedures in place to minimize or eliminate the risk that an infant may be discharged from the hospital with the wrong parent or family, or failing to follow same.

High and Rector's pleadings altogether eschew mention of "medical records." However, their claims necessarily concern the hospital's failure to have reasonable processes and procedures in place to create and maintain accurate medical records (i.e., accurate patient-identifying information) for each infant patient. *See Weems*, 575 S.W.3d at 363

10

(noting "a party cannot avoid Chapter 74's requirements and limitations through artful pleading"). Though we observe that patient-identifying procedures may present in alternative forms, we are unable to disassociate High and Rector's attenuated contention that the hospital had a duty to correctly identify and maintain an accurate identification of each infant with the hospital's recognized duty to create and maintain accurate medical records. *See* 25 TEX. ADMIN. CODE § 133.41(j)(4); *see generally* TEX. HEALTH & SAFETY CODE ANN. § 241.0263 (a), (d) (setting forth security procedures to "reduce the likelihood of infant patient abduction" or to "aid in the identification of missing infants," which include "footprinting, photographing, or writing descriptions of infant patients at birth"); *Strategies to Improve Patient Identification: Accurate Patient Identification Essential to Avoid Adverse Health, Financial Risks*, 26 HEALTHCARE REGISTRATION 3 (2017) (reviewing standards and practices to reduce the risk of misidentifying patients during hospital care); Tara R. Crane, *Mistaken Baby Switches*, 21 J. LEGAL MED. 109, 110–11 (2000) (exploring the possible breaches of professional duties which may arise and liability theories to which hospitals may be exposed when infant patients under their care are "switched").

Moreover, at minimum, the claims High and Rector present here are "premised on facts that *could* support" health care liability claims, and they must be treated as such. *See Lake Jackson*, 640 S.W.3d at 838 ("[C]laims 'premised on facts that *could* support claims' that qualify as health care liability claims *are* health care liability claims, regardless of the pleading's specific allegations." (quoting *Loaisiga*, 379 S.W.3d at 255)). It is well-established that the "creation and maintenance of accurate health records is . . . a professional or administrative service directly related to health care," and a patient's medical records "must contain accurate data and information pertaining to the patient."

11

*See Weems*, 575 S.W.3d at 365 (quoting 22 TEX. ADMIN. CODE § 165.1(a), (a)(10)). It follows that an infant's medical records containing incorrect patient-identifying information (or, as relevant here, incorrect prenatal care history or post-delivery information) would be a deviation from accepted professional or administrative standards. Therefore, provided that the final element of the statute is satisfied, High and Rector's claims may constitute health care liability claims.[4]

To the third and final element of whether Christus Spohn's alleged act or omission proximately caused the injury to the claimants, we answer affirmatively. *See Bioderm Skin*, 426 S.W.3d at 758. A substantive nexus exists between Christus Spohn's alleged act or omission—its failure to correctly identify each infant and maintain accurate identification for each infant, an inseparable part of the hospital's professional or administrative duty to create and maintain accurate medical records—and High and Rector's claimed injury—their misidentification as infants and the resulting erroneous discharge. *See Weems*, 575 S.W.3d at 364 ("Weems's claims, if true, satisfy the final element of a health care liability claim, because the central thesis of his claim is that the purported falsification proximately caused the injuries, he—the claimant—alleges he has suffered."). Thus, we conclude that High and Rector have asserted health care liability claims subject to the TMLA's expert report requirement. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 74.351.

---

[4] Christus Spohn also contends that High and Rector's claims involve allegations of "departure[s] from accepted standards" of health care and safety. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 505 (Tex. 2015) (setting forth a list of non-exclusive considerations to help courts determine whether there is a substantive nexus between the safety standards allegedly violated and the providing of health care). Given our resolution of this element under the "professional or administrative service" provision, we do not reach these subissues. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

The parties agree that the trial court did not rule on the adequacy of the submitted expert reports in its denial of Christus Spohn's motion and remand would be appropriate following a finding by this Court that High and Rector's claims are health care liability claims. We reverse and remand for further proceedings consistent with this opinion.

CLARISSA SILVA
Justice

Delivered and filed on the
17th day of November, 2022.